J-A19017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN EUGENE PATRICK, III | : | |
| | : | |
| Appellant | : | No. 1631 MDA 2017 |

Appeal from the Judgment of Sentence July 10, 2017
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0000873-2016

BEFORE:  GANTMAN, P.J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.:                **FILED FEBRUARY 13, 2019**

Appellant John Eugene Patrick, III, appeals from the judgment of sentence following his convictions involuntary deviate sexual intercourse (IDSI), statutory sexual assault, unlawful contact with a minor, corruption of minors, and indecent assault.[1]  Appellant asserts that his conviction was against the weight of the evidence, his sentence is excessive in light of the gravity of the offenses and his rehabilitative needs, and the trial court erred in admitting evidence obtained in violation of the Pennsylvania Wiretap Act.[2] We affirm.

_____

[1] 18 Pa.C.S. §§ 3123(a)(7), 3122.1(b), 6318(a)(1), 6301(a)(1)(ii), and 3126(a)(8), respectively.

[2] 18 Pa.C.S. §§ 5701-5782.

The trial court summarized the relevant factual background to this matter as follows:

During the time period at issue in trial (September 2015 to January 2016) B.A. (hereinafter "Victim") was 14 to 15 years old, and lived with her adoptive mother, her twin sister, and Appellant (her adopted brother) . . . in Gettysburg, Adams County, Pennsylvania.

On January 20, 2016, [Victim] testified she remained home from school because her mouth was sore from having braces put on. [Victim] testified Appellant came into her room that morning and woke her up. She testified Appellant asked her to have sex with him and she agreed. Appellant and [Victim] went to the living room where Appellant removed his and [Victim]'s clothes. Appellant had [Victim] perform oral sex on him[,] which, she explained, meant Appellant's penis was inside her mouth. Next, Appellant performed oral sex on [Victim] where his tongue went inside her vagina. Appellant then had Victim stand up and turn around so she was facing away from him. Appellant "[went] behind [[Victim]] and put his penis in [her] vagina." [Victim] testified Appellant did not ejaculate inside of her but on a nearby towel. After the assault, [Victim] put her pink underwear back on. [Victim] testified after the incident occurred she went back to bed. [Victim] showered at about 6:00 p.m.

At approximately 8:00 p.m., [Victim] testified she "decided that [she] couldn't stay anymore" and "packed her bags and . . . went to [her] neighbor's house." Her neighbor, Keith Klinefelter ("Klinefelter") testified [Victim] came to his residence and told him "[s]he needed help." Klinefelter testified [Victim] told him "her stepbrother . . . was sexually assaulting her." While [Victim] was at Klinefelter's house, Appellant and [Victim]'s sister arrived at Klinefelter's residence looking for her.

Klinefelter took [Victim] to the Cumberland Township police station where she spoke to Detective Stephen Higgs ("Detective Higgs") at approximately 8:30 p.m. [Victim] told Detective Higgs what Appellant did to her and gave him the pink underwear she put on after the assault. Next, [Victim] went to Gettysburg Hospital for a forensic sexual assault examination. Allison Arrowood ("Nurse Arrowood"), a [Sexual Assault Nurse Examiner] at Gettysburg Hospital[,] performed an examination of [Victim].

- 2 -

Nurse Arrowood collected as evidence the underwear [Victim] wore when she came in for the exam and vaginal swabs[,] which she provided to the police. [Nurse Arrowood also noted an abnormal reddened area at Victim's vaginal opening.] Detective Higgs sent [Victim]'s pink underwear and the sexual assault kit to the Pennsylvania State Police crime lab for testing.

At trial, [Victim] also testified Appellant assaulted her prior to the January 20, 2016 incident. Specifically, that between September 2015 and January 2016[,] Appellant had sexual intercourse with her "almost daily, but not every day." She testified the incidents occurred "in the living room, on the other side of the kitchen, in the basement." During that time frame, [Victim] also testified she performed oral sex on Appellant and he performed oral sex on her. She testified this occurred "usually in the basement[,]" which [was] Appellant's bedroom. When asked why she did not report the incidents prior to January 20, 2016, [Victim] explained Appellant threatened "he would tell [her] mom and blame it on [her] and make it seem like [she] was the one who wanted everything to happen."

Mary Ayres was called as a witness for Appellant and on direct examination she testified that she is the mother of [Victim] and Appellant and both lived in her household during the relevant time period. [Victim] slept in a first floor bedroom with her sister next to Mary Ayres' bedroom and Appellant slept in the basement. When asked about [Victim]'s sleeping situation[,] Mary Ayres testified that she "always locked their bedroom from the time they were five years old." Mary Ayres further testified that on January 20, 2016, "I woke up about just a little bit before 7:00 [a.m.], because I remember the incident very well because [Victim's sister] had climbed up to [Victim] and took her socks off, and we were laughing about that that morning, and [Victim] stayed home because she had an orthodontist appointment that day." Mary Ayres further testified that "[she] got up and [Victim] made [her] coffee, [Victim] made herself a cup of tea, and then [Victim's sister] left for school and [she and Victim] sat around talking in the kitchen for a little while and then in the living room until it was time to go to the orthodontist around 1:00. When asked where Appellant was on January 20, 2016, Mary Ayres testified "[h]e was usually in the basement playing his guitar." Mary Ayres also testified that when [Victim] and her sister were home they were never out of her sight and she never heard any problem between Appellant and [Victim].

On cross-examination Mary Ayres testified that Appellant left her residence the evening of January 20, 2016[,] and never returned to her residence. Between January 20, 2016[,] and June 28, 2016[,] Mary Ayres had telephone conversations with Appellant. Mary Ayres advised Appellant that Detective Higgs had been to the house and spoke with Mary Ayres and Mary Ayres testified concerning her conversation with Appellant[:] "but we just discussed that, yeah, there was a problem, and it had to be resolved," referring to the sexual assault allegations by [Victim] against Appellant.

The Commonwealth also questioned Mary Ayres about a recorded confrontation between her and [Victim] on March 20, 2016.[3] The Commonwealth cross-examined Mary Ayres concerning the following statements[4] Mary Ayres made to [Victim] during the March 20, 2016 recorded confrontation: "you fucking ruined someone's life. All because you let him fuck you and that ruined his life." "He should have known better than to fuck a 15-year-old that's going to be vindictive, you are a vindictive little bitch, that's what you are." "[L]et a 46-year-old man do you, uh, that's gross, I never though you would have done something like that." "You know better than to say yes to a man but you didn't." "Oh, you're disgusting, shut the fuck up, shut the fuck up, because I don't want to hear anything come out of your mouth because it's all fucked up, your way of talking, shut up, I don't want to hear you, shut the fuck up, he shouldn't have asked, then [Victim] wouldn't have said yes, you're fucked up with that way of thinking." "[I]t was consensual, it was consensual, consensual." After Mary Ayres was confronted with each quote, she either denied having said it or did not remember saying it. She did agree that if she said those things they would have been contained in the recording. Mary Ayres testified that as a result of the confrontation with [Victim] on March 20, 2016[,] she entered pleas of guilty on December 15, 2016[,] to endangering the welfare of a child and terroristic threats.

Suppl. Trial Ct. Op., 11/21/18, at 1-6 (footnotes and citations omitted).

---

[3] Victim recorded the argument on her cellphone.

[4] The Commonwealth questioned Mary Ayres about the statements and the trial court permitted Detective Higgs to read the statements into the record during rebuttal. The trial court did not allow the recorded statements to be played for the jury. **See** N.T., 4/13/17, at 318.

At the conclusion of the trial, the jury found Appellant guilty of the aforementioned offenses. On July 10, 2017, the trial court sentenced Appellant to an aggregate sentence of twenty-four to forty-eight years' incarceration, including consecutive standard range sentences of eight to sixteen years for both counts of IDSI and one count of unlawful contact with a minor, graded as a felony of the first degree. Appellant also received concurrent sentences of four to eight years' incarceration for statutory sexual assault and two to four years' incarceration for one count of unlawful contact with a minor, graded as a felony of the third degree, and corruption of a minor.[5] Appellant filed a timely post-sentence motion challenging the excessiveness of his sentence and alleging that the court failed to consider his rehabilitative needs properly. The trial court denied Appellant's post-sentence motion on October 6, 2017.

Appellant filed a timely notice of appeal on October 11, 2017. On October 30, 2017, the trial court directed Appellant to file a concise statement of errors complained of on appeal under Pa.R.A.P. 1925(b) within twenty-one days. Appellant did not file a Rule 1925(b) concise statement until December 11, 2017.

---

[5] Appellant did not receive a separate sentence for indecent assault because it merged with the IDSI and statutory sexual assault convictions.

Meanwhile, the trial court filed an initial Pa.R.A.P. 1925(a) opinion on December 8, 2017, before receiving Appellant's concise statement. As a result, we remanded this matter for the trial court to file a supplemental Rule 1925(a) opinion.[6] The trial court filed a supplemental Rule 1925(a) opinion on November 21, 2018.

On appeal, Appellant raises three issues, which we have reordered as follows:

1. Whether the trial court erred in denying Appellant's [p]ost-[s]entence [m]otion where his convictions were against the weight of the evidence so as to shock one's sense of justice where Appellant was never shown to have committed the crimes alleged[.]

2. Whether the trial court erred in denying Appellant's [p]ost-[s]entence [m]otion where Appellant's sentence is excessive and unreasonable and constitutes too severe a punishment in light of the gravity of the offense, Appellant's rehabilitative needs, and what is needed to protect the public[.]

3. Whether the trial court erred in admitting illegally obtained evidence in violation of the Pennsylvania Wiretap Act[,] 18 Pa.C.S. § 5721.1(a)(1)[,] during the Commonwealth's cross examination of a defense witness and whether the probative value of such evidence was outweighed by its prejudicial effect.

Appellant's Brief at 6.

In his first issue, Appellant asserts that his convictions were against the weight of the evidence. *Id.* at 33. However, a claim that the verdict was

_____

[6] ***See Commonwealth v. Burton***, 973 A.2d 428, 433 (Pa. Super. 2009) (*en banc*) (holding that where there has been an untimely filing of a Rule 1925(b) statement, "this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal. If the trial court did not have an adequate opportunity to do so, remand is proper").

- 6 -

against the weight of the evidence must be raised in the trial court orally or in writing before sentencing or in a post-sentence motion. **See** Pa.R.Crim.P. 607(A) ("A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial"); **Commonwealth v. Sherwood**, 982 A.2d 483, 494 (Pa. 2009) (holding that although the appellant "included an issue challenging the verdict on weight of the evidence grounds in his 1925(b) statement and the trial court addressed [the appellant's] weight claim in its Pa.R.A.P 1925(a) opinion, [he] did not preserve his weight of the evidence claim for appellate review in the absence of an earlier motion." (citations omitted)).

Here, our review reveals that Appellant did not challenge the weight of the evidence before sentencing or in his post-sentence motion. Therefore, we are constrained to conclude that Appellant has waived the issue. **See Sherwood**, 982 A.2d at 494.

Next, Appellant raises a discretionary aspects of sentencing claim. Appellant argues that his sentence was excessive and did not take into consideration his rehabilitative needs and the lack of danger he poses to the community. Appellant's Brief at 35. Appellant asserts that "[t]here was never any testimony that [Appellant] was violent or that he presented an untenable danger to society. His sentence of 24-48 years [of incarceration is] excessive given . . . Appellant's rehabilitative needs and the danger he poses to the community." **Id.**

We note that an appeal challenging the discretionary aspects of sentencing is not an appeal as of right. *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011).

> To determine whether an appellant has properly preserved the discretionary aspects of sentencing for appellate review, we must conduct the following four part analysis: (1) whether appellant has filed a timely notice of appeal;(2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence;(3) whether appellant's brief has a fatal defect;and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id*. (footnotes and citation omitted).

Here, Appellant filed a timely notice of appeal, the issue of whether Appellant's sentence was excessive and whether the court failed to consider his rehabilitative needs was preserved in a post-sentence motion, and Appellant's brief includes a Pa.R.A.P. 2119(f) statement of the reasons relied upon for allowance of appeal. Accordingly, we turn to whether a substantial question exists in this matter.

We note that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (citation omitted). Accordingly, Appellant presents a substantial question in this appeal.

Where a sentence is imposed within the guidelines, we may only reverse the trial court if we find that the circumstances of the case rendered the application of the guidelines "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2).

Our review of the reasonableness is based upon the factors contained in 42 Pa.C.S. § 9781(d),[7] and the trial court's consideration of the general sentencing standards contained in 42 Pa.C.S. § 9721(b).[8]

In fashioning a sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. *See* 42 Pa.C.S. § 9721(b); *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009). "[W]here the sentencing judge had the benefit of a pre-sentence investigation report [(PSI)], it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Ventura*, 975 A.2d at 1135 (citation omitted).

_____

[7] Section 9781(d) includes the following:

> **(d) Review of record.—**In reviewing the record the appellate court shall have regard for:
>
> > (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
> >
> > (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
> >
> > (3) The findings upon which the sentence was based.
> >
> > (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

[8] Section 9721(b) provides that the court must follow the general principal that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).

In this matter, Appellant's sentence for each conviction fell within the guideline range. The trial court was well aware of the nature and circumstances of the crimes involved, particularly since it had access to a PSI. *See id.* At sentencing, the trial court stated:

> The aggregate sentence imposed in this case is a sentence of 24 years to 48 years. This [c]ourt has imposed this sentence based on the fact that [Appellant] in this case engaged in an ongoing course of sexual conduct with [Victim] for a period of up to five months. This ongoing course of conduct included numerous sexual encounters involving sexual intercourse with [Victim], [Appellant] having [Victim] perform oral sex on himself and [Appellant] performing oral sex on [Victim]; the fact that [Appellant] was living under the same roof as [Victim] during this ongoing course of sexual conduct and [Appellant] exerted psychological influence on [Victim] to ensure she would not report these sexual assaults; the fact that [Appellant] was 45 to 46 years old at the time he committed these offenses and [Victim] was 15 years old; the [c]ourt has taken into account the substantial impact that these crimes have had on [Victim]. [Victim] has lost her family and she has lost relationships with her stepmother and most importantly has lost the relationship with her twin sister; the [c]ourt has taken into account the emotional impact that these crimes have had on the victim; the [c]ourt has taken into consideration [Appellant's] testimony at trial. [Appellant] lied under oath while testifying at trial; and this [c]ourt takes into account that [Appellant] has shown no remorse whatsoever for his actions in this case and the impact on [Victim].
>
> * * *
>
> As a condition of [Appellant's] sentence he shall have no contact with [Victim]. A further condition will be that [Appellant] participate in sexual offender treatment and programming at the designated state correctional institution.

Order, 7/10/17, at 4-5.

Accordingly, a review of the record reveals no basis to conclude that the trial court failed to consider or inappropriately weighed the lack of physical

violence associated with Appellant's offense or Appellant's rehabilitative needs in light of the gravity of the offense and the impact on Victim. On this basis, we cannot conclude that the sentence imposed was "clearly unreasonable." *See* 42 Pa.C.S. § 9781(c). Therefore, Appellant's discretionary aspects of sentencing claim entitles him to no relief.

In his final issue, Appellant asserts that

> [i]t is uncontested that the prosecution cross-examined defense witness Mary Ayres about oral communications that she made to [Victim] while they were both in Mary Ayres' home. [Victim] used her cellphone to record those statements without Mary Ayres' consent. Such actions were undertaken in violation of the Pennsylvania Wiretap Act and the fruits of this illegal act should have been suppressed.

Appellant's Brief at 20. Specifically, Appellant argues that Victim "recorded a private conversation between herself and Mary Ayres [in violation of 18 Pa.C.S. § 5703], and that this recording does not meet any of the exceptions delineated in the Pennsylvania Wiretap Act[.]" *Id.* at 28. Appellant further argues that the probative value of the contents of the conversation was substantially outweighed by the prejudice to Appellant of permitting the contents to be introduced into evidence. *Id.* at 31.

Here, the trial court's decision to permit cross-examination of Mary Ayres based upon the recorded oral conversation implicates the construction and application of the Wiretap Act's provisions. Accordingly,

> our review is guided by the rules set forth in the Statutory Construction Act of 1972 ("SCA"). 1 Pa.C.S.A. § 1501 *et seq.* The SCA instructs that "the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to

give effect to all its provisions." 1 Pa.C.S.A. § 1921(a). Further, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). When, however, the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering other matters. 1 Pa.C.S.A. § 1921(c).

Under the SCA, "[w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S.A. § 1903(a). If the General Assembly defines words that are used in a statute, those definitions are binding. A court may presume that in drafting the statute, the General Assembly intended the entire statute to be effective. 1 Pa.C.S.A. § 1922(2). Thus, when construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections.

*Commonwealth v. Deck*, 954 A.2d 603, 606-07 (Pa. Super. 2008) (some citations omitted).

We note the following regarding the Wiretap Act's framework:

As a general rule, in Section 5703, the Act prohibits the interception, disclosure or use of any wire, electronic or oral communication. 18 Pa.C.S.A. § 5703. In Section 5704, however, the Act sets forth several exceptions to Section 5703's prohibitions and allows for the interception of a wire, electronic or oral communication in designated circumstances. 18 Pa.C.S.A. § 5704. In Section 5721.1, the Act provides a statutory exclusionary rule that authorizes the suppression of interceptions that were not carried out in compliance with Section 5704's exceptions. 18 Pa.C.S.A. § 5721.1(b); *Commonwealth v. Spangler*, 809 A.2d [234, 238 & n.7 (Pa. 2002)].

*Deck*, 954 A.2d at 607.

As to the Wiretap Act's specific provisions, we begin with Section 5703, which provides:

Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:

- 12 -

(1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication;

(2) intentionally discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or

(3) intentionally uses or endeavors to use the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication.

18 Pa.C.S. § 5703. Subject to certain exclusions not pertinent here, the Wiretap Act defines "oral communication" as "[a]ny oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 Pa.C.S. § 5702.

One exception to Section 5703 is set forth in Section 5704, which permits

[a]ny victim, witness or private detective . . . to intercept the contents of any wire, electronic or oral communication, if that person is under a reasonable suspicion that the intercepted party is committing, about to commit or has committed a crime of violence and there is reason to believe that evidence of the crime of violence may be obtained from the interception.

18 Pa.C.S. § 5704(17).

The statutory exclusionary rule in Section 5721.1 provides that evidence may be disclosed by

[a]ny person who has obtained knowledge of the contents of any wire, electronic or oral communication, or evidence derived

- 13 -

therefrom, which is properly subject to disclosure under section 5717 (relating to investigative disclosure or use of contents of wire, electronic or oral communications or derivative evidence) may also disclose such contents or evidence in any matter relating to any criminal, quasi-criminal, forfeiture, administrative enforcement or professional disciplinary proceedings in any court, board or agency of this Commonwealth or of another state or of the United States or before any state or Federal grand jury or investigating grand jury. Once such disclosure has been made, then any person may disclose the contents or evidence in any such proceeding.

18 Pa.C.S. § 5721.1(a)(2).  However,

[a]ny aggrieved person who is a party to any proceeding in any court, board or agency of this Commonwealth may move to exclude the contents of any wire, electronic or oral communication, or evidence derived therefrom, on . . . the following grounds:

(1) Unless intercepted pursuant to an exception set forth in section 5704 (relating to exceptions to prohibition of interception and disclosure of communications), the interception was made without prior procurement of an order of authorization under section 5712 (relating to issuance of order and effect) or an order of approval under section 5713(a) (relating to emergency situations) or 5713.1(b) (relating to emergency hostage and barricade situations).

18 Pa.C.S. § 5721.1(b)(1).  An "aggrieved person" is "[a] person who was a party to any intercepted wire, electronic or oral communication or a person against whom the interception was directed."  18 Pa.C.S. § 5702.

Instantly, the aggrieved person was Mary Ayres.  Appellant was not an aggrieved person since his oral communication was not intercepted nor was the interception directed at him.  *See* 18 Pa.C.S. § 5702.  Accordingly, Appellant was not an aggrieved person who was also a party to the proceeding in which he attempted to exclude the contents of the conversation between

Mary Ayres and Victim, as required by Section 5721.1(b).  **See** 18 Pa.C.S. §

5721.1(b).  Therefore, Appellant did not have standing under the Wiretap Act

to seek to exclude the contents of the conversation from being introduced into

evidence during his trial.  **See id.**  For the foregoing reasons, the trial court

did not violate the Wiretap Act in permitting the contents of the conversation

between Mary Ayres and Victim from being introduced into evidence.[9]

Appellant also argues that the probative value of the contents of Mary

Ayres' wiretapped conversation with the Victim was outweighed by the

---

[9] In any event, we agree with the trial court that Victim's recording of the conversation with Mary Ayres falls under an exception to the prohibition of intercepting and disclosing communications.  Under 18 Pa.C.S. § 5704(17), it is not unlawful and court approval is not required for

> [a]ny victim, witness or private detective . . . to intercept the contents of any wire, electronic or oral communication, if that person is under a reasonable suspicion that the intercepted party is committing, about to commit or has committed a crime of violence and there is reason to believe that evidence of the crime of violence may be obtained from the interception.

18 Pa.C.S. § 5704(17).  For purposes of the Wiretap Act, a "crime of violence" includes, among other things, intimidation of a witness or victim under 18 Pa.C.S. § 4952, retaliation against a witness or victim under 18 Pa.C.S. § 4953, and any equivalent offense.  **See** 18 Pa.C.S. § 5702.  Here, Victim was under a reasonable suspicion that Mary Ayres was committing or about to commit a crime of violence, because Mary Ayres was berating her in a manner consistent with intimidation of witnesses.  As an indication that Mary Ayres' behavior rose to the level of criminal behavior justifying a wiretap, we note that Mary Ayres was later charged and pled guilty to intimidation in a child abuse case based on the conversation Victim recorded.  Because intimidation in a child abuse case is an equivalent offense to intimidation under Section 4952, **see** 18 Pa.C.S. § 4958(a), it qualifies as a crime of violence under the Wiretap Act and Victim was justified in recording the conversation with Mary Ayres on March 20, 2016.

- 15 -

prejudice of the contents to him. Appellant asserts that this provides an alternative basis under which the trial court should have excluded the evidence.

In considering Appellant's issue, we note that

[a]dmissibility of evidence is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Lynn*, 192 A.3d 165, 169 (Pa. Super. 2018) (citations and internal quotation marks omitted).

We note that under Pa.R.E. 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. In general, "relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "The credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise provided by statute or these rules." Pa.R.E. 607; *see also* Pa.R.E. 613(a) ("A witness may be examined concerning a prior inconsistent statement made by the witness to impeach the witness's credibility."). As is pertinent in this matter, relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, among other things. Pa.R.E. 403. Because all relevant Commonwealth evidence is meant to prejudice a defendant, exclusion of evidence is limited

to evidence so prejudicial that it would "inflame the jury's sensibilities with reference to matters other than the legal propositions relevant to the case." ***Commonwealth v. Gonzalez***, 112 A.3d 1232, 1238 (Pa. Super. 2015) (quotation marks and citations omitted).

Here, the court permitted the contents of the conversation to be read to the jury but did not permit the recorded conversation to be played:

> I will allow you, in rebuttal, to actually have the detective take the stand, and he can say what is on the recording. I'm not playing the recording itself. I think the prejudice outweighs any probative value [by playing the recording], but he can say on the recording what she specifically said in rebuttal.

N.T., 4/13/17, at 318. As the trial court noted in its supplemental Rule 1925(a) opinion,

> [i]t is clear from Mary Ayres' testimony that she was called as a fact witness by Appellant to show that Appellant was not in a position to have committed a sexual assault against [Victim] on January 20, 2016[,] or in the months preceding January 20, 2016. The statements of Mary Ayres made to [Victim] during the recorded confrontation on March 20, 2016[,] are clearly relevant, given the direct testimony provided by Mary Ayres at trial, because her statements tend to make a fact at issue more or less probable or support a reasonable inference or presumption regarding a material fact, that is that the Appellant sexually abused [Victim]. Such statements are also admissible to impeach or rebut Mary Ayres' direct testimony. Furthermore, the probative value of these statements clearly outweighs any unfair prejudice to Appellant, as they go directly to whether the sexual abuse occurred in this matter. As such, the recorded statements of Mary Ayres of March 20, 2016[,] are relevant and the probative value outweighs any danger of unfair prejudice to Appellant.

Suppl. Trial Ct. Op., 11/21/18, at 11-12.

We agree with the trial court that the probative value of Mary Ayres' statements was not outweighed by the potential of unfair prejudice to Appellant. The statements were relevant as they went to Mary Ayres' credibility and demonstrated her belief that Appellant had committed the sexual offenses charged in this matter. *See Gonzalez*, 112 A.3d at 1238. Additionally, Mary Ayres actually denied making certain statements on the recording, *see* N.T., 4/13/17, at 314, 376, which permitted the Commonwealth to introduce evidence of those statements as prior inconsistent statements. *See* Pa.R.E. 613(a). Thus, the trial court did not abuse its discretion in permitting the Commonwealth to cross-examine Mary Ayres regarding the statements and in allowing the statements to be read to the jury during rebuttal. *See Lynn*, 192 A.3d at 169.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/13/2019