J-A12031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOSHUA DEAR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HARSHAL DEAR | : | |
| | : | |
| Appellant | : | No. 3023 EDA 2023 |

Appeal from the Order Entered October 31, 2023
In the Court of Common Pleas of Chester County Civil Division at No(s):
2022-05035-CU

BEFORE:   PANELLA, P.J.E., KING, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                **FILED AUGUST 13, 2024**

Harshal Dear ("Mother") has filed an appeal challenging five separate

orders filed on October 31, 2023 with respect to the custody litigation between

Mother and Joshua Dear ("Father") (collectively, "Parents") concerning their

biological son, M.D., born in February 2020.[1]  We affirm.

———————————————————

* Former Justice specially assigned to the Superior Court.

[1] As discussed further *infra*, Mother's notice of appeal purported to collectively challenge five separate orders concerning the parties' respective custody awards, contempt, and sanctions.  We emphasize with disapproval that Mother's filing of a single appeal under these circumstances was improper.  It is well-established that "a single appeal is incapable of bringing on for review more than one final order, judgment[,] or decree."  **Gen. Elec. Credit Corp. v. Aetna Cas. & Sur. Co.**, 437 Pa. 463, 469-70, 263 A.2d 448, 452 (Pa. 1970); **see also** Pa.R.A.P. 341 cmt.; Pa.R.A.P. 512, Note.  This Court may quash appeals of this nature where "no meaningful choice" can be made as to the multiple orders implicated by a litigant's single appeal.  **Id.**  However, an error of this nature need not be deemed "fatal" when it is possible for the trial
*(Footnote Continued Next Page)*

We glean the relevant factual and procedural history of this matter from the certified record, which the trial court has aptly summarized, as follows:

The parties were married on April 12, 2018. They are the parents of one child, M.D., born [in February 2020]. The parties had decided to divorce, and Mother initiated a divorce action on January 11, 2020 . . . .

[Thereafter,] the parties engaged in a "nesting" arrangement wherein M.D. remained in the [marital] home and the parties moved in and out on a week on/week off basis. Father filed for custody on March 23, 2022. The parties subsequently entered into a co-parenting and co-habitation agreement[, which was filed on June 2, 2022, and provided, *inter alia*, that Parents would have shared legal and physical custody of M.D. **See** Father's Custody Complaint, 7/8/22, at Exhibit A.] . . . . At some point, Mother was no longer able to . . . honor the nesting agreement and returned to living in the marital residence on a full-time basis. Father also went back to living at the marital residence on a full-time basis. Father's custody action was dismissed after a conciliation as the parties were still residing under the same roof.

Mother obtained employment in the Plymouth Meeting area and informed Father that she was moving and taking M.D. Father did not pose an objection to Mother moving or to Mother taking M.D. on her custodial time; however, he never said that she could move and keep M.D. full-time, which is what she effectively did. She also changed M.D.'s daycare to one closer to her home without Father's knowledge or consent. On July 8, 2022, Father filed the instant [custody] action.

The parties appeared for a custody conciliation on September 16, 2022[,] and an [interim custody] order was entered on September 20, 2022, granting the parties shared legal custody and Mother primary physical custody. . . . [On December 1, 2022, Mother filed a petition for contempt alleging Father had failed to abide by certain aspects of the interim custody order. On January 30,

_____

court to ascertain and address the arguments presented. **See Dong Yuan Chen v. Saidi**, 100 A.3d 587, 589 n.1 (Pa.Super. 2014). Instantly, the trial court was able to identify and substantively respond to Mother's arguments. Under these circumstances, we decline to quash. **See id.**

2023, Father filed a petition for sanctions alleging that Mother had forged a document to falsely indicate that Father had been diagnosed with an autism spectrum disorder ("ASD"). A consolidated trial on the various pending petitions] was scheduled for March 14 and 15, 2023. At the conclusion of those two days . . ., due to the court's concern about Mother's behavior, a psychological evaluation was ordered for her. At Mother's request, the court ordered Father to undergo a psychological evaluation as well.[2]

The [c]ourt found Mother's behavior to be detrimental to M.D., as she continued her quest to have him labeled with a special need, be it a sensory issue or [ASD], and granted Father sole legal custody to stop the unrelenting health care appointments for M.D. and shared physical custody. . . .

Opinion and Order, 10/31/23, at 2-3. On July 7, 2023, Father filed a petition for contempt alleging Mother had violated portions of the interim custody order concerning M.D.'s daycare. After the trial court received the respective psychological evaluations of Parents, it held additional hearings on the pending custody matters on August 21, 23, 25, and 30, 2023.

On October 31, 2023, the trial court filed five separate orders that: (1) awarded Father sole legal custody and primary physical custody of M.D.; (2) directed Mother to pay $5,000 in legal fees due to her "dilatory conduct" in connection with these custody proceedings; (3) denied Mother's December 1, 2022 petition for contempt; (4) granted Father's January 30, 2023 motion for sanctions and directed Mother to pay $1,200; and (5) granted Father's July 7,

---

[2] Specifically, the certified record generally indicates that Mother undertook a concerted, unsuccessful effort to diagnose Father and M.D. with ASD. Given the nature of our holding in this matter, we will not discuss this issue further.

2023 petition for contempt and awarded him $1,000 in legal fees. *See* Orders, 10/31/23; Custody Order, 10/31/23, at 1-9 (unpaginated).

On November 30, 2023, Mother filed a single, timely notice of appeal purporting to challenge all five orders and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On January 2, 2024, the trial court filed a Rule 1925(a)(2)(ii) opinion.[3]

Mother has raised the following issues for our consideration:

1. Did the [c]ourt commit reversible error when [it was] provided with an *ex parte* letter from Father's counsel[,] which it accepted as fact and used as the basis to strip Mother's legal custodial rights, and reduce her physical custodial time regarding the 3[-]year-old child, without holding a hearing, and thus deprived her of her substantive and due process fundamental rights to a fair trial under the law, and further her substantial fundamental right to be a parent?

2. Did the trial court err as a matter of law when it failed to conduct a trial and conclude a case within the time required by [Pa.R.C.P. 1915.4], and specifically (c) regarding [t]rial[?]

_____

[3] In her Rule 1925(a)(2)(i) and (b) statement, Mother set forth twenty-four allegations of error spanning eleven pages, thereby straining the conciseness that is required of such submissions. In its Rule 1925(a)(2)(ii) opinion, the trial court opined that Mother's appellate claims should be waived for this reason. *See* Trial Court Opinion, 1/2/24, at 4-6. Despite Mother's voluminous allegations, however, it is clear from the trial court's filings that it was able to readily identify and respond to Mother's alleged assignments of error. *See id.* at 6-32. Furthermore, Mother has significantly truncated the issues presented in her brief to this Court. Accordingly, we decline to find waiver under these circumstances. *See Boehm v. Riversource Life Ins. Co.*, 117 A.3d 308, 319 n.3 (Pa.Super. 2015) (declining to find waiver despite litigant raising thirty-six claims of error in a concise statement where "the trial court was able to address the general issues raised" in complex litigation, the issues were winnowed in the appellate brief, and there was no evidence of bad faith).

3. Did the [c]ourt commit reversible error when it did not issue the [o]pinion in the time proscribed by Pa.R.C.P. 1915.4(d), and further prejudiced Mother's rights, and specifically, the [c]ourt remained [u]nresponsive, after already not conducting the trial pursuant to Pa.R.C.P. 1915.4(c)?

Mother's Brief at 3-4 (issues reordered for ease of disposition; cleaned up).

Our relevant standard and scope of review is well-established:

Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Rogowski v. Kirven*, 291 A.3d 50, 60-61 (Pa.Super. 2023) (cleaned up).

As with all custody-related matters, this Court's "paramount concern is the best interest of the child involved." *Id*. at 61 (internal citation and quotation omitted). Indeed, Pennsylvania law provides that the court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S.A. § 5338(a). To that end, the Child Custody Act sets forth a number of factors at § 5328(a) that a court must

consider prior to modifying an existing custody order. *See E.B. v. D.B.*, 209 A.3d 451, 460 (Pa.Super. 2019); 23 Pa.C.S.A. § 5328(a)(1)-(16). While a court's consideration of these factors is mandatory, "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *Id*. (cleaned up).

In order to evidence its consideration of these elements, custody courts must set forth a discussion of these best-interest factors "prior to the deadline by which a litigant must file a notice of appeal." *A.V. v. S.T.*, 87 A.3d 818, 820 (Pa.Super. 2014). Instantly, the custody court provided a timely and complete assessment of the sixteen Section 5328(a) factors in an opinion filed contemporaneously with its October 31, 2023 custody order. *See generally* Order and Opinion, 10/31/23, at 1-25 (unpaginated).

We will begin our review by addressing Mother's claim concerning an allegedly *ex parte* communication sent by Father's counsel to the trial court. *See* Mother's Brief at 21 ("The trial court in this case relied upon an *ex parte* letter provided by [Father's] counsel which contained numerous allegations against Mother which the [c]ourt accepted whole-cloth."). Mother's argument concerns a letter dated March 17, 2023, which was sent by Father's counsel, Elizabeth C. Early, Esquire, to the trial court via email and first-class mail. This document appears in the certified record as part of Mother's trial exhibits.

*See* Mother's Exhibit 48. At the time this letter was sent, Mother was still represented by Steven H. Rubin, Esquire, who withdrew on March 20, 2023.[4]

"An *ex parte* communication, by definition, involves the inclusion of one party in a consultation with a judge over the exclusion of another." *Commonwealth v. Gonzalez*, 112 A.3d 1232, 1240 (Pa.Super. 2015). As a general matter of American jurisprudence, *ex parte* communications are heavily disfavored: "Courts around the country generally agree that material *ex parte* communications are improper in any case. They can extraneously influence decisions by introducing information outside the court record, and can do so unfairly because the communications are not shared with all participants." *Commonwealth v. McClure*, 172 A.3d 668, 689 (Pa.Super. 2017). Accordingly, *ex parte* communications are "widely forbidden as a matter of procedure, due process, and ethics, as they deprive a litigant of the right to a fair trial before an impartial tribunal." *Id.*

Our review indicates that Mother has misrepresented the nature of the at-issue letter. Specifically, the letter indicates that it was also contemporaneously transmitted to Attorney Rubin, *i.e.*, Mother's attorney of record. *See* Mother's Exhibit 48. Indeed, at trial, Mother introduced the email in which Attorney Early sent this letter to Attorney Rubin, thereby verifying that he received a copy of the letter. *See* Mother's Exhibit 51. Moreover, the

_____

[4] We note that Mother subsequently retained replacement counsel.

- 7 -

text of the letter reveals that Attorney Early had provided Attorney Rubin with advance warning of her intent to send this letter to the trial court. *See* Mother's Exhibit 48 ("I advised Mr. Rubin that I intended to write to the court."). Furthermore, Mother testified that Attorney Rubin provided her with a copy of this letter. *See* Notes of Testimony ("N.T."), 8/30/23, at 68.

Based upon the foregoing, there is simply no support in the certified record for the gravamen of Mother's argument. We find no merit in Mother's unsupported claim concerning the March 17, 2023 letter. Since no *ex parte* communication occurred, no relief is due. *See*, *e.g.*, *Gonzalez*, 112 A.3d at 1240 (finding no merit to claim concerning an alleged *ex parte* communication when counsel for both parties were included in the challenged exchange).

We now turn to Mother's second and third claims for relief. While presented as separate issues, we will address these arguments collectively since they are substantially similar and pertain to the same procedural rule. Specifically, Mother asserts that the trial court's scheduling of the custody hearings and its determination violated the provisions of Pa.R.C.P. 1915.4(c) and (d), which proscribe the time for completion of custody trials and decisions. *See* Mother's Brief at 13-20, 23-25. Specifically, Mother contends that we must vacate the custody orders due to the trial court's failure to strictly adhere to these time limits. *Id.* We do not agree.

Mother's arguments implicate Rule 1915.4(c)-(e), which provide, as follows:

**Rule 1915.4.  Prompt Disposition of Custody Cases**

. . . .

**(c) Trial.**  Trials before a judge shall commence within 90 days of the date the scheduling order is entered. Trials and hearings shall be scheduled to be heard on consecutive days whenever possible but, if not on consecutive days, then the trial or hearing shall be concluded not later than 45 days from commencement.

**(d) Prompt Decisions.**  The judge's decision shall be entered and filed within 15 days of the date upon which the trial is concluded unless, within that time, the court extends the date for such decision by order entered of record showing good cause for the extension. In no event shall an extension delay the entry of the court's decision more than 45 days after the conclusion of trial.

**(e) Emergency or Special Relief.**  Nothing in this rule shall preclude a party from seeking, nor a court from ordering, emergency or interim special relief at any time after the commencement of the action.

Pa.R.C.P. 1915.4(c)-(d).

There seems to be little question that the scheduling of the custody trial and the trial court's issuance of its final decision transgressed the time limits set forth above.  Father filed a trial demand on November 9, 2022, and the trial court issued its scheduling order on December 1, 2022, which initially set trial for January 17, 2023.  Attorney Rubin, however, suffered a "serious fall" and requested a continuance until February 16, 2023, which was granted. *See* Motion for Continuance, 1/17/23, at 1.  Thereafter, Attorney Rubin requested a second continuance due to a "preplanned, prepaid vacation" until February 28, 2023, which was also granted.  Motion for Continuance, 1/31/23, at 1.  Finally, a change in the trial court's availability led to the third

postponement. *See* Order, 2/28/23, at 1. Hearings were ultimately held on March 14 and 15, 2023, at which point the trial court paused the proceedings so that Parents could undergo psychological evaluations. *See* Order, 3/30/23, at 1-2 (directing Mother to undergo a psychological evaluation); Order, 5/17/23, at 1-2 (same as to Father). The custody trial concluded on August 30, 2023. After filing an order extending its time for the entry of an opinion pursuant to Rule 1915.4(d), the trial court filed its final custody determination on October 31, 2023. *See* Order, 10/9/23, at 1.

Based upon this procedural review, we observe three violations of the time limits established by Rule 1915.4(c)-(d), namely: (1) the custody trial was commenced 104 days after the trial court filed its scheduling order as opposed to ninety days; (2) the custody trial concluded 170 days after it began, which is beyond the mandated forty-five-day time frame; and (3) the trial court issued its final determination sixty-three days after trial concluded, which is beyond the forty-five-day period contemplated by our Rules of Civil Procedure.[5] To the extent Mother contends that these time periods are not in conformity with Rule 1915.4(c)-(d), she is correct.

---

[5] We note that Mother preserved these violations of Rule 1915.4(c)-(d) in pre-determination filings in the trial court. *See* Post-Trial Memorandum, 9/8/23, at 10 (alleging violation of Rule 1915.4(c) for allegedly failing to schedule prompt custody trial); Letter, 9/26/23 (inquiring regarding the status of a final custody decision for the purposes of Rule 1915.4(d) compliance).

As detailed above, however, the certified record concomitantly demonstrates that these delays were not occasioned by dilatory scheduling or judicial negligence. Specifically, the delays in bringing this matter to trial were occasioned by emergency continuance requests submitted by Mother's own attorney. Thereafter, the trial court deemed it necessary to pause the proceedings in order to obtain psychological evaluations of the parties. Then, the court's final determination was delayed due to the court's absence from chambers for several weeks and the voluminous nature of these proceedings.[6]

Mother's arguments concerning timeliness have overlooked the provisions of Rule 1915.4(e), which empower the court to grant "emergency or interim special relief" irrespective of the other provisions of the same Rule. *See* Pa.R.C.P. 1915.4(e). Instantly, the circumstances described above appear to establish reasonable grounds for deviation from the typical time limits imposed by Rule 1915.4(c) and (d), which included a medical emergency, factual exigencies requiring out-of-court investigation, and judicial unavailability. While we cannot condone the lengthy timeline for these custody proceedings, we are hard-pressed to identify an unjustified violation. *See*, *e.g.*, *A.C. v. J.B.*, 1751 EDA 2022, 296 A.3d 589, at *9 (Pa.Super. 2023) (non-precedential decision) (refusing to fault a trial court for violations of Rule

_____

[6]  Specifically, the custody trial included transcripts of six full days of testimony, along with 126 exhibits admitted during the various hearings.

1915.4(d) that were occasioned by a "planned vacation" and an "extraordinarily" complex case).[7]

Even assuming, *arguendo*, that there was no sufficient excuse for the trial court's failures to abide by the provisions of Rule 1915.4(c)-(d), Mother would not be entitled to relief on these claims. Specifically, this Court has held that since the terms of Rule 1915.4(c)-(d) do not provide an explicit remedy or sanction, this Court will not vacate a custody order due to a failure to abide by these timeliness requirements. **See Heffley v. Heffley**, 977 WDA 2023, 2024 WL 1855126, at *8 (Pa.Super. April 29, 2024) (non-precedential decision) (declining to vacate order due to violations of Rule 1915.4(c) and (d) since "these subsections do not provide a remedy or any other sanction if the trial court does not comply with the time limits"). We have explained:

> [T]he Rule serves an instruction to the trial court to issue a decision in a custody matter within the prescribed time, and if a timely decision is not issued, it allows either party to petition the trial court, reminding it that its decision is overdue, and if an opinion is not then issued, to petition . . . for relief.

**E.B. v. M.B.**, 304 A.3d 754, 3 WDA 2023, at *13 (Pa.Super. Aug. 14, 2023) (non-precedential decision). Thus, Mother is not entitled to relief.

Based upon the foregoing, we observe no abuse of discretion or error of law in the trial court's custody orders. Thus, we affirm.

Orders affirmed.

_____

[7] The non-precedential decisions of this Court that were published after May 1, 2019, may be cited for their persuasive value. **See** Pa.R.A.P. 126(b).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>8/13/2024</u>