J-S40043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN KEITH SHOWELL | : | |
| | : | |
| Appellant | : | No. 2121 EDA 2023 |

Appeal from the Judgment of Sentence Entered August 3, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0002477-2021

BEFORE: STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED FEBRUARY 21, 2025**

Brian Keith Showell ("Showell") appeals from the judgment of sentence imposed following his convictions for five counts of attempted murder, five counts of aggravated assault, three counts of aggravated assault of a person less than thirteen years old, aggravated arson—person present inside property, causing or risking catastrophe, and possessing instruments of crime.[1] We affirm.

By way of background, in the early morning hours of May 14, 2021, Showell tried to burn down the home of Monica Griffith ("Monica") while she and her four children were sleeping. Police arrested Showell and charged him

_____

[1] **See** 18 Pa.C.S.A. §§ 901(a), 2502(a), 2702(a)(1), 2702(a)(9), 3301(a.1)(1)(ii), 3302(b), and 907(a).

with attempted murder and related offenses. The trial court summarized the evidence supporting Showell's convictions as follows:

> . . . [Monica] testified she was awakened by smoke detectors shortly after midnight on May 14, 2021. After checking on her children, she went downstairs to investigate. Initially, she was only aware of a fire at the back door because smoke was coming from that direction. The fire was mostly out when she opened the door. She doused the area with water and had her son review video footage of the back door from the surveillance camera. [Monica] testified she clearly saw Showell in the video setting fire to her back door. She recognized Showell because she had known him for [seventeen] years and he is the father of her youngest child, who was five months old at the time of the fire. She testified Showell was married with three other children[,] and he wanted to keep the baby a secret. She acknowledged she had threatened to tell Showell's wife on several occasions, but never went through with it. The week of the fire, [Monica] received the results from a home DNA test that showed Showell was the baby's father. The day of the fire, the victim gave Showell a final ultimatum: "Either you tell your wife about the baby, or I will." Showell told the victim he was at work that day and got off at 11:30 p.m. The last text [Monica] sent Showell before the fire was "I'm serious" at 11:29 p.m.
>
> After seeing the video, [Monica] testified she tried to call Showell and texted him that she had video cameras, to which he replied, "I just got off." She also called Showell's wife and informed her of their affair and fire. She then reported the fire to the police.
>
> Chester Police Officer Sean Boyd [("Officer Boyd")] testified he was the first to respond to what he thought was a domestic disturbance call and found the front door darkened with smoke still rising from a burned carpet in front of the door. He testified the house was filled with a decent amount of smoke everywhere he could see. [Officer] Boyd reviewed the video, which showed a man attempting to light the rear door on fire. The rear door still had a fair amount of smoke coming from it. Officer Boyd got the family out of the house and called the fire department.
>
> Chester Detective Brian Pot [("Detective Pot")] testified that Monica provided him with surveillance video files from the

incident, showing her front and rear doors. **See** N.T., 4/19/23, at 132-33. He further testified that Monica] identified Showell in a photo array. [Detective Pot personally interviewed Showell after the incident. Detective Pot] also testified he was able to identify Showell in the surveillance video [from interviewing him after his arrest. **See id**. at 136-37; 141-44. Showell's counsel objected arguing that the detective did not have any "personal knowledge" of Showell on which to base his identification. **Id**. at 133-36. The trial court overruled the objection and allowed the detective to identify Showell as the person depicted in the surveillance video. **See id**. at 136-37. After the trial court permitted the testimony, Showell's counsel did not request a curative instruction and stated, "All right, I'm just noting my objection for the record." **Id**. at 136. Detective] Pot testified Showell provided him with the name "Amy Manchester" as his wife's name. His wife's actual name is Marena Showell. As a result of the misidentification, [Detective] Pot was unable to interview Showell's wife until a month before the trial. That interview was not published to the jury during the trial.

State Trooper Sean Maher [("Trooper Maher") testified as an expert in fire investigation and evidence collection. **See id**. at 164-67. Trooper Maher detailed his investigation into the cause of the May 14, 2021 fires. **See id**. at 171-76, 178. He] testified that he responded to the fire and collected samples of the burned front door carpet and rear door[, and placed the samples in sealed paint cans for laboratory analysis. **See id**. at 176-180. Trooper Maher testified that the evidence at the fire scene suggested that a poured liquid had been set on fire. **See id**. at 171.] He opined that both were set by human hands due to the absence of any accidental causes in the area, like an electrical wire or cigarette butt. [At the beginning of Trooper Maher's testimony, the Commonwealth requested permission from the trial court to unseal the burnt carpet and wood samples recovered from the crime scene marked as exhibits C-34 and C-35 and present them to the jury. **See id**. at 162-63, 188-89. Showell's counsel initially objected to the Commonwealth's request to unseal exhibits C-34 and C-35 in front of the jury, arguing that counsel "presume[d]" that the items would "smell strongly of lighter fluid[,]" and that the sudden smell would be unfairly prejudicial and inflammatory to Showell. **See id**. at 162. The trial court overruled the objection but noted counsel's exception. **See id**. at 162-63. Exhibits C-34 and C-35 were not immediately unsealed at that time. **See id**. The Commonwealth unsealed exhibits C-34 and C-35 later during

Trooper Maher's testimony and passed them around to each juror, at which point Showell's counsel stated, "I have no objection." *Id*. at 189-90. The record is silent as to whether any smell was emitted when the paint cans were unsealed.]

Christina Fialkowski, a forensic scientist with [Pennsylvania State Police ("PSP"), qualified as a fire analysis expert testified that] she tested both samples and found they contained a petroleum distillate akin to charcoal starter fluid.

The defense presented Marena Showell as an alibi witness. She testified the couple were married since 2012[,] but were separated with no hope of reconciliation by May 2021. They lived together for financial reasons. Marena Showell testified she was with [Showell] throughout the day on May 13[, 2021]. Around 10 p.m. they went upstairs to watch television. She testified Showell went downstairs to the kitchen about 11 p.m. to wash dishes. Marena Showell said she could hear her husband in the kitchen. She admitted she could not see him until about 11:55 p.m., when he came upstairs briefly and then returned to the kitchen. Marena Showell testified she received a text from [Monica] at approximately 12:09 a.m. on May 14, [2021] informing her of the affair with her husband and the fire.

. . . Showell testified in his defense. He described how he spent his evening. He acknowledged he was not actually at work that day but denied being the man captured in the video or going to [Monica's] home that night.

[On the last day of trial, the trial court delivered its jury instructions stating to the jury that it was solely their "responsibility to weigh the evidence." N.T., 4/20/23, at 66. The trial court also explained to the jury that they were "only judges of the facts[,]" so it was their recollection of the evidence that controlled. *Id*. at 65-66. After the jury began their deliberations, they asked to see the surveillance video. *See id*. at 88. The jury had it replayed several times and many of the jurors approached the monitor to view it in closer detail. *See id*. at 90-94. The jury also asked to see Showell's profile for comparison. *See id*. at 94-95.]

Trial Court Opinion, 11/8/23, at 1-4 (unnecessary capitalization omitted).

At the conclusion of trial, the jury convicted Showell of the above-referenced crimes. On August 3, 2023, the trial court resentenced Showell to an aggregate term of ten to twenty years in prison, with a concurrent term of seven years of probation.[2] Showell filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Showell raises the following issues for our review:

I.  Did the trial court abuse its discretion when it permitted Detective . . . Pot to provide identification testimony that the person depicted in a surveillance video was [Showell]?

II.  Did the trial court abuse its discretion when it permitted the Commonwealth to present and open sealed paint cans, containing burned evidence, which included a flammable petroleum liquid?

Showell's Brief at 4 (unnecessary capitalization omitted).

At the outset, we note that both of Showell's issues challenge the admission of certain evidence at trial. In reviewing a challenge to the admissibility of evidence, our standard of review is well-settled and very narrow:

Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is

_____

[2] The trial court initially sentenced Showell to an aggregate term of ten to twenty years in prison, with a concurrent term of twenty years of probation on July 13, 2023. However, the Commonwealth filed a motion to modify the sentence, which the trial court granted and resentenced Carter on August 3, 2023.

manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa. Super. 2020) (citation omitted). "[T]he appellant sustains the 'heavy burden' to show that the trial court has abused its discretion." *Commonwealth v. Christine*, 125 A.3d 394, 398 (Pa. 2015) (citation omitted).

"Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. 2002) (citation omitted); *see also* Pa.R.E. 401, 402.

In Showell's first issue he claims that the trial court abused its discretion by permitting Detective Pot to provide lay opinion testimony identifying him as the individual in the surveillance footage from the back door camera of Monica's house. Pennsylvania Rule of Evidence 701 provides that the lay opinion of a witness is admissible if the opinion is: rationally based on the perception of the witness; (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (3) not based on "scientific, technical, or other specialized knowledge" within the scope of Rule 702. Pa.R.E. 701.

Under appropriate circumstances, this Court has upheld decisions to allow police to offer lay opinion testimony. *See Commonwealth v. Palmer*,

192 A.3d 85 (Pa. Super. 2018) (finding detective's lay opinion testimony identifying Palmer as the shooter in a surveillance video to be admissible where the identification was based upon the detective's own perceptions from personally viewing the video of the shooting, then comparing earlier portions for other instances where Palmer appeared); *see also Commonwealth v. Williams*, 315 A.3d 65 (Pa. Super. 2024) (unpublished memorandum at *6) (determining that trial court did not abuse its discretion in admitting officer's identification of Williams from a surveillance video as his testimony was "helpful for the jury to assess the credibility of [the victim's] identification of [Williams] as the shooter").[3]

Showell argues that Detective Pot's identification testimony was not rationally based on his perception of Showell. Showell insists that Detective Pot "did not know [Showell], nor did he have any prior interaction with [him]." Showell's Brief at 15. Showell maintains that Monica was the "source of Detective Pot's identification" and he "prepared a photo array" which included Showell's photo. *Id*. However, Showell concedes that Detective Pot directly interacted with Showell during an interview just prior to his arrest.[4] *See id*.;

_____

[3] *See* Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

[4] We note that Detective Pot testified that he interviewed Showell following his arrest. *See* N.T., 4/19/23, at 141.

*see also id*. at 12 (wherein Showell acknowledges Detective Pot's "personal knowledge" of Showell based on "his interview with [Showell]").[5]

The trial court considered Showell's first issue and determined that it lacked merit. The trial court reasoned that "[h]ere, . . . [t]he witness's testimony was rationally based on the detective's perception upon retrieving and reviewing the video." Trial Court Opinion, 11/8/23, at 14-15.

Based on our review, we discern no abuse of discretion by the trial court in allowing Detective Pot to identify Showell as the person depicted in the surveillance video. During Detective Pot's testimony at trial, he stated that he was able to identify Showell in the video because of his interactions with Showell during his interview following his arrest. *See* N.T., 4/19/23, at 141, 257. Furthermore, Showell conceded that Detective Pot had "personal knowledge" of Showell based on the detective's "direct interaction" with Showell during his interview. Showell's Brief at 15. Thus, contrary to

---

[5] Showell additionally argues that, when his counsel objected to Detective Pot's identification testimony, the trial court should have provided an instruction that the jury's observations controlled, and that "the testimony of a police officer should be given any more or less weight for the mere fact that a witness is a police officer." Showell's Brief at 16. However, Showell concedes that he did not raise this issue at trial or request any such instruction from the trial court. *See id*. Thus, as Showell failed to raise this issue before the trial court, he failed to preserve it for our review. *See Commonwealth v. Pressley*, 887 A.2d 220, 222-23 (Pa. 2005) (holding that the failure to request a jury instruction at the appropriate time of trial renders a complaint about the court's failure to issue the instruction waived on appeal); *see also* Pa.R.A.P. 302(a) (providing that issues not raised in the trial court are waived and cannot be raised for the first time on appeal).

Showell's assertions otherwise, the record reflects that Detective Pot's identification testimony was rationally based on his own perception based on his interactions with Showell.[6]

In Showell's second issue, he claims that the trial court abused its discretion in permitting the prosecution to open the paint cans containing the remnants of burnt carpet and wood samples recovered from the crime scene because, although relevant, the smell emanating from such evidence was unfairly prejudicial and inflammatory. Pursuant to our Rules of Evidence, a court may exclude relevant evidence if its probative value is outweighed by its potential to cause unfair prejudice. **See** Pa.R.E. 403. However, "[e]vidence is not unfairly prejudicial simply because it is harmful to the defendant's case." **Commonwealth v. Williams**, 255 A.3d 565, 576 (Pa. Super. 2021). Rather, "'[u]nfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403, Comment; **see also**

_____

[6] We note that, even if the admission of Detective Pot's identification testimony constituted an abuse of discretion, his testimony was merely cumulative of Monica's identification testimony, which Showell concedes was properly admitted. **See** Showell's Brief at 14 (stating that "[t]he trial court properly allowed [Monica] to testify as to the identity of [Showell] in the video"). Accordingly, any possible error in the admission of the detective's testimony would have been harmless, since it was cumulative to other evidence that Showell conceded was properly admitted. **See Commonwealth v. Murray**, 248 A.3d 557, 576 (Pa. Super. 2021) (reaffirming that, "[w]e may consider error harmless only where . . . the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence) (citation omitted).

*Commonwealth v. Gonzalez*, 112 A.3d 1232, 1238 (Pa. Super. 2015) (stating that "[b]ecause all relevant Commonwealth evidence is meant to prejudice a defendant, exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case"). Furthermore, the trial court is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration" where the evidence is relevant to defendant's guilt. *Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014) (citation omitted).

Showell argues that the trial court abused its discretion by allowing the Commonwealth to unseal the paint cans in front of the jury which contained burnt carpet and wood samples recovered from the crime scene. Showell notes that his counsel objected to the potential smell that might be emitted if the paint cans were permitted to be opened. Specifically, Showell was concerned that the smell of lighter fluid by the jury could have a prejudicial effect on his case. *See* Showell's Brief at 18. Showell points out that both paints cans "literally passed under the noses of the [j]ury;" however, Showell acknowledges that "[t]he record is silent as to the extent [the paint cans] smelled of lighter fluid . . .." *Id*.[7]

---

[7] Showell additionally maintains that, although the paint cans and the evidence they contained were relevant, the act of opening the paint cans was "needlessly cumulative" because the Commonwealth had already introduced
*(Footnote Continued Next Page)*

The trial court considered Showell's second issue and determined that it lacked merit. The court reasoned:

> [E]vidence of the burned items from the victims front and back door [we]re clearly admissible. The fact that they had a chemical smell when unsealed did not prejudice [Showell] in the least. [Showell's] defense was that he was not there, he did not set the fire[s], it was someone else. . . . Based on his defense, [Showell] is unable to prove the court abused its discretion in allowing this evidence.

Trial Court Opinion, 11/8/23 at 15-16.

Based on our review, we discern no abuse of discretion by the trial court in permitting the prosecution to unseal the paint cans containing burned items from the crime scene. Initially, we note that the record is silent as to whether any smell did, in fact, emanate from the paint cans after they were unsealed. Defense counsel did not create a record regarding any such smell, and instead stated "I have no objection" when the Commonwealth passed the unsealed

---

thirty-five photos and two videos of the fire scene. Showell's Brief at 19. However, our review of the record reveals that Showell failed to raise any objection to the opening of the paint cans on this basis. *See Commonwealth v. Duffy*, 832 A.2d 1132, 1136 (Pa. Super. 2003) (holding that a party must make timely and specific objection at trial to preserve issue for appellate review); *see also* Pa.R.A.P. 302(a). Accordingly, the failure by Showell's counsel to raise a timely objection on the basis that this evidence was cumulative results in waiver for purposes of appellate review. Furthermore, we define cumulative evidence as "additional evidence of the same character as existing evidence and that supports a fact established by the existing evidence." *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 989 (Pa. Super.2007) (*quoting* Black's Law Dictionary, Seventh Edition, at 577), *appeal denied*, 944 A.2d 756 (Pa. 2008). However, as in this case, "[e]vidence that strengthens or bolsters existing evidence is corroborative evidence; we have previously explained that corroborative evidence is not cumulative evidence." *See id*.

paint cans to the jury. N.T., 4/19/23, at 189-90. Thus, this Court is unable to meaningfully consider what smell, if any, was emitted from the unsealed paint cans. In any event, even assuming that a smell emanated from the paint cans, we discern no basis to fault the trial court's determination that the probative value of the evidence outweighed any prejudice Showell may have suffered from the smell. Given that intent was an element of aggravated arson—person present inside property, the use of an accelerant such as lighter fluid, was highly relevant to the question of whether Showell deliberately and intentionally attempted to set the house on fire. ***See*** Pa.C.S.A. 3301(a.1)(1)(ii). The trial court was not required to sanitize the evidence admitted at trial to Showell's benefit. ***See Hairston***, 84 A.3d at 666 (citation omitted). Thus, after a careful review of the record, we conclude that Showell failed to show that the trial court abused its discretion in allowing the Commonwealth to unseal the paint cans containing burnt carpet and wood samples in front of the jury.

For the foregoing reasons, we determine Showell is not entitled to relief on any of his issues. We thus affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/21/2025