J-S77005-14

2015 PA Super 48

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LUIS GONZALEZ | |
| Appellant | No. 1913 EDA 2013 |

Appeal from the Judgment of Sentence entered June 4, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0009991-2009

BEFORE:  STABILE, JENKINS, and STRASSBURGER,[*] JJ.

OPINION BY STABILE, J.:                    **FILED MARCH 11, 2015**

Appellant, Luis Gonzalez, appeals from the judgment of sentence imposed on June 4, 2013 in the Court of Common of Philadelphia County following his convictions for rape of a child, involuntary deviate sexual intercourse (IDSI) with a child, and related offenses stemming from crimes committed against his stepdaughter (Victim) over the course of approximately eight years.[1]  Following review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant was convicted of rape, 18 Pa.C.S.A. § 3121(c); IDSI with a child, 18 Pa.C.S.A. § 3123(b); IDSI with a child over 12 and under 16, 18 Pa.C.S.A. § 3123(a)(7); aggravated indecent assault of a child under 16, 18 Pa.C.S.A. § 3125(a)(8); intimidation of a witness or victim, 18 Pa.C.S.A. § 4952; endangering the welfare of children, 18 Pa.C.S.A. § 4304; terroristic

*(Footnote Continued Next Page)*

In its opinion filed in accordance with Pa.R.A.P. 1925(a), the trial court provided the following factual history:

> The evidence adduced at trial established that Appellant raped his stepdaughter, [Victim], unmercifully in every way possible, starting from the tender young age of eight (8) and continuing until she was sixteen (16). Over this eight (8) year period, Appellant repeatedly penetrated each orifice of [Victim] – anally, orally, and vaginally – and also penetrated her with an object. He forced her to perform oral sex on him twice per week starting when she was in fourth (4th) grade and continuing until the age of sixteen (16). Appellant raped his stepdaughter with such force that he tore/transected her hymen – which, it should be noted, occurs in fewer than five percent (5%) of sexual abuse cases. Further, Appellant perpetrated the sexual abuse over an extended period by repeatedly threatening [Victim] that he would kill her mother, sister and family members if she were to tell anyone. [Victim] believed that Appellant would follow through on his violent threats, having previously witnessed him beat, kick and choke her mother on more than one occasion. (N.T. 02/06/13, at pp. 10-83).
>
> In fact, [Victim's] sister, M.G., who was eight (8) years old at the time, caught Appellant raping [Victim], then age eleven (11), on the sofa, prompting her to yell "stop . . . please stop[!]" Appellant continued, however, and angrily ordered M.G. to go back upstairs, and she complied. Moments later, [Victim] entered the upstairs bathroom crying and bleeding from her vagina:
>
>> My room was right next to the bathroom, and I heard her crying in the bathroom. So, I went to the bathroom to ask her, like, this crying, and she just said I don't want to talk about it. And she was bleeding, and I didn't know what [that was], that moment, I didn't know, like, why she was bleeding. And I was crying, and [Appellant] came up to me and said don't tell nobody, don't tell your mom, don't tell nobody. . . . He said I will hurt you and your family.

*(Footnote Continued)* _____

threats, 18 Pa.C.S.A. § 2706; and unlawful contact with a minor, 18 Pa.C.S.A. § 6318.

(N.T. 02/06/13, at pp. 131-133).

Like [Victim], M.G. was scared to tell anyone about the incident due to first-hand observations of Appellant beating her mother in violent rages. Indeed, both girls testified to one incident in which they heard banging, screaming and yelling from the basement. They walked over to the basement steps and looked down to find Appellant beating their mother.

> And he told us to stay where we are and watch, and he, like, was – my mom was on the floor, so he would kick her in the ribs, punch her. We seen him, like, grabbing her neck and she was crying, she was screaming, but her scream was very light, like, already, and she ended up passing out, and we had to stay there on the steps watching her.

(N.T. 02/26/13, at pp. 15-16; 134-135).

In addition to threatening harm, Appellant routinely explained to [Victim] that he "had to" commit these sexual assaults, as follows: "He would tell me that it was because I was too close to my mom. . . . And every time I would get close to my mom or I would follow her, every time I get close to my mom, he would do this. He said this is what you get for not being close with me." (N.T. 02/06/13, at p. 30; *see id.* at pp. 43, 49, 51.

Trial Court Opinion (T.C.O.), 4/1/14, at 2-3.[2]

The jury returned a verdict of guilty on all charges. *See* n.1.

Following review of the pre-sentence investigation report, the trial court

_____

[2] We note the trial court refers to M.G. as Victim's sister and, in fact, Victim and M.G. refer to each other as sisters. However, M.G. is the biological daughter of Appellant and Victim's mother and is, therefore, actually Victim's half-sister.

sentenced Appellant to an aggregate term of 30 to 60 years in prison.[3]
Appellant filed a Motion for Reconsideration of Sentence, which the trial court denied on June 17, 2013. Appellant filed a timely appeal to this Court and complied with the trial court's directive to file a statement of errors complained of pursuant to Pa.R.A.P. 1925(b), raising the same four issues he presents for this Court's consideration:

    A. Did the lower court err in granting the Commonwealth's Motion to Admit Other Crimes Evidence pursuant to Pennsylvania Rules of Evidence 404(b)(2), and did the lower court err by not denying the Commonwealth's motion pursuant to 404(b)(1) and (3)?

    B. Did the lower court err in allowing ex parte contact between a [c]ourt [o]fficer and the jury, by allowing a jury question to be answered in the deliberation room through a court officer rather than in open court?

    C. Did the lower court err in failing to order a mistrial when a juror passed out during testimony? The juror, in the presence of other jurors, was attended to by a doctor who was testifying as a Commonwealth expert witness. This allowed a witness close contact with jurors and prejudiced the jurors in their ability to decide on the credibility of that expert witness.

    D. Did the lower court err by not ordering a mistrial when a juror passed out during trial and the Sheriff removed [Appellant] from the court room through the custody door in potential view of jurors?

_____

[3] The trial court observed there was overwhelming evidence presented at a pre-sentence hearing to support a finding that Appellant is a sexually violent predator. T.C.O., 4/1/14, at 4 n.1. Appellant has not challenged that determination, *id.*, nor has he challenged the judgment on the basis of weight or sufficiency of evidence.

Appellant's Brief at 3.

In his first issue, Appellant asserts the trial court erred in granting the Commonwealth's motion to admit "other crimes" evidence under Pa.R.E. 404(b)(2) and contends the trial court should have denied the motion under Pa.R.E. 404(b)(1) and (3). As a challenge to admissibility of evidence, we apply an abuse of discretion standard. *Commonwealth v. Dillon*, 925 A.2d 131 (Pa. 2007). In *Dillon*, our Supreme Court explained:

> Appellate courts typically examine a trial court's decision concerning the admissibility of evidence for abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Typically, all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility. *See* Pa.R.E. 401; Pa.R.E. 402; *see also Commonwealth v. Malloy*, 579 Pa. 425, 856 A.2d 767, 775 (2004).

*Id.* at 136 (internal quotations and some citations omitted).

The subsections of Rule 404 in question in this case provide:

> **(b) Crimes, Wrongs or Other Acts.**
>
> *(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> *(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible

only if the probative value of the evidence outweighs its potential for unfair prejudice.

*(3) Notice in a Criminal Case.* In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b).

Appellant argues that allowing testimony of prior violent acts he committed against his wife, who is the mother of Victim and her sister M.G., was "an attempt to color Appellant as a violent, jealous, controlling individual who has a propensity to commit violent crimes against women" and was "much more prejudicial than probative." Appellant's Brief at 11. The trial court explained that Appellant misconstrued the court's ruling and rejected his claim, noting the Commonwealth was permitted to elicit the "bad acts" testimony from Victim and her sister to "explain[] the delay in reporting sexual abuse in addition to establishing the *res gestae* of the sexual assaults." T.C.O., 4/1/14, at 5 (citing **Dillon**, 925 A.2d at 139-40). We agree.

In **Dillon**, our Supreme Court recognized that Rule 404(b)(1) provided an exception to the general rule of admissibility for evidence of other crimes, not as a matter of relevance, "but of policy, *i.e.,* because of a fear that such evidence is so powerful that the jury might misuse the evidence and convict based solely upon criminal propensity." **Id.** at 137 (citation omitted). However, the Court noted that "a series of 'exceptions to the exception' (to

- 6 -

the rule of relevance) have been recognized" in Rule 404(b)(2), which does not contain an exhaustive list of exceptions. *Id.* "For instance, this Court has recognized a *res gestae* exception to Rule 404(b) which allows admission of other crimes evidence when relevant to furnish the context or complete story of the events surrounding the crime." *Id.*

The Court in **Dillon** also recognized that, under 18 Pa.C.S.A. § 3105, "[a] jury may consider evidence of a lack of prompt complaint in cases involving sexual offenses."[4] The Court stated:

> Section 3105 codified a common law principle recognizing that the victim of a sexual assault naturally would be expected to complain of the assault at the first safe opportunity. . . . Generally, there are three principles upon which evidence addressing the timeliness of a sexual assault complaint has been deemed relevant and admissible: (1) as an explanation of an inconsistency/silence; (2) as corroboration of similar statements; or (3) as a *res gestae* declaration.

*Id.* (citations omitted).

In **Dillon**, the Court concluded:

---

[4] 18 Pa.C.S.A. § 3105 provides:

> Prompt reporting to public authority is not required in a prosecution under [the sexual offenses] chapter: Provided, however, That nothing in this section shall be construed to prohibit a defendant from introducing evidence of the complainant's failure to promptly report the crime if such evidence would be admissible pursuant to the rules of evidence.

> [B]oth the common law experience and the judgment of the General Assembly have led to a recognition of the relevance of the promptness of a complaint of sexual abuse, and this Court has separately recognized the reality that a sexual assault prosecution oftentimes depends predominately on the victim's credibility, which is obviously affected by any delay in reporting the abuse. Revealing the circumstances surrounding an incident of sexual abuse, and the reasons for the delay, enables the factfinder to more accurately assess the victim's credibility. Moreover, this Court has acknowledged that juries in sexual assault cases expect to hear certain kinds of evidence and, without any reference to such evidence during the trial, a jury is likely to unfairly penalize the Commonwealth, the party with the burden of proof.

*Id.* at 138-39 (citations omitted).

Our review of the trial transcripts leads us to conclude that the trial court did not abuse its discretion by permitting testimony from Victim and her sister regarding Appellant's violent physical attacks upon their mother. As the trial court recognized, the Commonwealth was permitted to elicit the testimony to explain "the delay in reporting sexual abuse in addition to establishing the *res gestae* of the sexual assaults . . . *i.e.*, to explain the events and atmosphere surrounding the sexual assaults." T.C.O., 4/1/14, at 5. "Moreover, this [c]ourt carefully limited the bad acts sought to be introduced in order to safeguard against any potential prejudice." *Id.*[5]

---

[5] In a footnote to the opinion, the trial court explained, "Prior to trial, the Commonwealth moved for the admission of a host of instances of Appellant's bad acts, which this [c]ourt culled to the few referenced at trial so as to minimize any potential prejudice to Appellant." T.C.O., 4/1/14, at 5 n.3.

- 8 -

Appellant argues that allowing the jury to hear testimony about the beatings he inflicted on Victim's mother lacked probative value because the delay in reporting could be explained by the direct threats Appellant made to Victim. We disagree. Again, in the context of reporting delay and *res gestae*, testimony relating to the beatings was probative of Victim's fear of harm if she reported the abuse. Having witnessed the violent physical attacks on her mother, it was reasonable for Victim, as well as her sister, to believe Appellant's threats were more than empty veiled threats. We conclude the evidence "did not seek to inflame the jury's sensibilities with reference to matters 'other than the legal propositions relevant to the case.'" ***Commonwealth v. Antidormi***, 84 A.3d 736, 751 (Pa. Super. 2014) (citing ***Commonwealth v. Owens***, 929 A.2d 1187, 1191 (Pa. Super. 2007)). Moreover, as the trial court explained, it culled the proffered bad acts to the few referenced at trial to safeguard against prejudice. T.C.O., 4/1/14, at 5 n.3. As such, the trial court did not abuse its discretion in admitting the evidence as its probative value outweighed any potential for prejudice.[6]

_____

[6] We recognize, as this Court did in ***Owens***:

> Because all relevant Commonwealth evidence is meant to prejudice a defendant, exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. As this Court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and

*(Footnote Continued Next Page)*

Because the trial court did not abuse its discretion in permitting testimony explaining the reporting delay and establishing the *res gestae* of the assaults, furnishing the context and complete story surrounding the crimes, and because the probative value of the testimony outweighed any prejudice to Appellant, we conclude Appellant is not entitled to relief based on his first issue.

In his second issue, Appellant complains the trial court erred by permitting *ex parte* contact between a court officer and the jury, allegedly allowing the court officer to answer a jury question in the deliberation room. This claim is meritless. First, Appellant contends the trial court "failed to put on the record or question the Court Officer about any other questions or conversations that was [sic] had with the jury other than what the Judge instructed the Court Officer to say to the jury. Therefore, . . . Appellant cannot reasonably establish if there was any prejudicial conversations." Appellant's Brief at 13. Nevertheless, Appellant asks this Court "in the abundance of caution and in the interest of justice," to grant him a new trial based on the alleged "error." *Id.*

*(Footnote Continued)* ——————————

natural development of the events and offenses with which [a] defendant is charged.

*Owens*, 929 A.2d at 1191 (citations omitted).

Appellant does not point to anything in the record to support his assertions. The transcript reflects five questions from the jury and the following exchange between the trial court and both counsel:

> **The court**: We have five questions from the jury.
> First: Can we please have a copy of the definitions of the law that have been provided to them[?]
> Second: Is there a time line and/or description of all events alleged?
> And I will send them back a written answer saying: You must only consider the evidence that was introduced at trial.
> All right. The white board, do you have a copy of that and do you agree that they can have that?
>
> [**Appellant's counsel**]: Yes, Your Honor.
>
> [**Commonwealth counsel**]: Yes, Your Honor.
>
> **The court**: So we will send them a copy of the white board chart.
> [Third:] Can we have a copy of journal entries to therapist[?]
> Is that what you were trying to agree upon a response to? The journal entries, as I recall, were referred to but certainly not read in the record and not testified to in any substance.
>
> [**Appellant's counsel**]: Yes
>
> **The court**: So I would assume neither of you are interested in sending that back?
>
> [**Commonwealth counsel**]: No, Your Honor.
>
> **The court**: So I will answer the same way; must rely upon your recollection of the evidence as it was introduced.
> [Fourth:] And can we have a transcript of [Victim's] testimony[?]
> I will say the same thing; that you have to rely upon your recollection, okay.
>
> [**Appellant's counsel**]: Yes, Your Honor.
>
> **The court**: [Court Crier], would you just show this to counsel?

**The court crier**:  Sure, Judge.

[**Appellant's counsel**]:  Very good, Your Honor.

**The court**:  All right.

[**Commonwealth counsel**]:  Yes.

**The court**:  All right.  Counsel agrees with my response to the jurors so that can be taken back with the white board chart.

**The court crier**: Judge, we will make a copy of this.

**The court**:  Yes.

[**Commonwealth counsel**]:  Do you have any objection to sending them a copy of the white board?

[**Appellant's counsel**]:  No.

**The court**:  Okay.

[**Appellant's counsel**]:  Thank you, Your Honor.

[**Commonwealth counsel**]:  Thank you, Your Honor.

(At this point a recess was taken.)

N.T., 2/8/13, at 3-5.  No further discussions concerning jury questions or jury instructions were recorded before the jury returned its verdict.

The above exchange clearly reflects that counsel agreed on the responses to the jurors' questions by sending out a white board chart that included a time line of events and by responding to the remaining questions with the written answer that the jurors were to rely on their recollections. Counsel for Appellant did not object to the answers or to the trial court's plan to send a written response to the questions.  Therefore, Appellant has

not preserved an objection with respect to any so-called *ex parte* contact between a court officer and the jury. As the trial court correctly stated, "It is well settled that, 'in order to preserve an issue on appeal, a party must lodge a timely objection.' [**Commonwealth v. Murray**, 83 A.3d 137, 155 (Pa. 2013) (quoting **Commonwealth v. Montalvo**, 956 A.2d 926, 936 (Pa. 2008))]. Here, neither party objected to the responses, but rather expressly endorsed them on the record. Therefore, the issue is waived." T.C.O., 1/4/14, at 6.

Even if not waived, Appellant's second issue would not warrant relief. As the trial court correctly noted, "[a]n *ex parte* communication, by definition, involves the inclusion of one party in a consultation with a judge **over the exclusion of another**." *Id.* (quoting **Commonwealth v. Murray**, 83 A.3d 137, 155 (Pa. 2013) (emphasis supplied in trial court opinion)). There was no such communication in this case. Counsel for both parties were present and participated in formulating responses to the jury's questions. Appellant's second issue, even if not waived, lacks merit.

In his third and fourth issues, Appellant contends the trial court committed error for failing to order a mistrial after a juror fainted. First, Appellant's counsel did not make a motion for mistrial. Therefore, the mistrial issues are waived. **Commonwealth v. Melvin**, 103 A.3d 1, 28

- 13 -

n.18 (Pa. 2014).[7]  Further, Appellant has not cited any legal authority in support of either issue.  For that reason as well, Appellant has waived his third and fourth issues.  ***Commonwealth v. McDonald***, 17 A.3d 1282, 1286 (Pa. Super. 2011) (citing Pa.R.A.P. 2119[(b)] and ***Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009) (finding "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived") (citations omitted)).

Even if not waived, Appellant is not entitled to relief.  Appellant complains the jurors were prejudiced when a doctor, testifying as a Commonwealth witness, came to the aid of a juror who fainted, allegedly prejudicing the jury in its ability to determine the credibility of the witness.  Appellant also contends a mistrial was appropriate because the sheriff removed Appellant from the court room in the potential view of jurors after the juror fainted.

The record reflects that all jurors were escorted from the court room when one juror fainted, with the exception of the juror who fainted and two jurors who assisted in her care with the doctor who was testifying when the incident occurred.  First, there is no suggestion the doctor's assistance had

_____

[7] We reject Appellant's suggestion that, even absent any objection or request for a mistrial, the trial court should have granted a mistrial "in the abundance of caution."  Appellant's Brief at 14.

- 14 -

any impact on her credibility and Appellant does not offer any basis for his speculation. Second, the trial court questioned the sheriff, under oath, about the process involved in removing Appellant from the court room as the events transpired. The sheriff explained that his partner escorted Appellant from the court room in such a way the two jurors attending the stricken juror could not have seen Appellant leave the room.

Before the jury was brought back to the court room, counsel for Appellant stated on the record:

> Your Honor, I spoke with the sheriffs and by the time [Appellant] was taken in back, I believe nine – no, I am sorry – 11 out of the 14 jurors were already in the back. The young lady who is not going to be a juror anymore, so it does not matter, was on the ground, and the two other jurors were taking care of her with the doctor and the sheriffs – I don't believe there is any reason to swear them in. I know these gentlemen both for many years and they both told me that they made sure that no one was looking when [Appellant] was taken back into the cell room.
>
> So, I don't believe there is any issue, I don't need any voir diring of any jurors to ask because my understanding is that no one noticed what happened. So, there shouldn't be an issue, Your Honor. I just wanted to put that on the record.

N.T., 2/7/13, at 22-23. The trial court asked to colloquy Appellant about the incident. The following exchange ensued.

[**Appellant's counsel**]: May I, Your Honor?

**The court**: Yes.

[**Appellant's counsel**]: Mr. Gonzalez, do you understand that in Pennsylvania, we do everything that we can to make sure that the jury doesn't know you are in custody during trial; did you know that?

- 15 -

[**Appellant**]:  Yes.

[**Appellant's counsel**]:  Did you understand what was just said?

[**Appellant**]:  Yes.

[**Appellant's counsel**]:  That most of the jurors were in the back, the young lady was on the floor and two jurors were helping her.  The sheriffs made sure no one was looking when you were taken back into custody.  Do you have a problem with that?

[**Appellant**]:  No.

**The court**:  Well, not that you have any problem, but do you understand, Mr. Gonzalez, that at a future date, if you were to be convicted here, and you have appellate rights after conviction, that you could not then raise an issue of, perhaps, prejudice because some of the jurors may have seen you be taken into custody.  In other words, you would be waiving that issue here and now; do you understand that?

[**Appellant**]:  Yes. ma'am.

**The court**:  And do you need to discuss that issue any further with your counsel?

[**Appellant**]:  No, ma'am.

**The court**:  All right.

*Id.* at 24-25.[8]

_____

[8] Even though Appellant's counsel vouched for the sheriffs and indicated it was not necessary for the trial court to put them under oath to testify about removing Appellant from the court room, the trial court did so out of "just the better part of caution" outside the hearing of the jury.  N.T., 2/7/13, at 52-55.  The sheriffs confirmed that efforts were made, and successfully so, to remove Appellant from the court room after 11 of the 14 jurors left the court room, without being seen by the two jurors who were attending to the juror who fainted.

Whether for waiver for lack of a mistrial motion, waiver for lack of citation to authority or developed argument, or for simple lack of merit based on the record, Appellant's third and fourth issues fail.

Appellant has not presented any basis for relief. Therefore, we shall affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/2015