J-S14041-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MOSHE KALMEN NOTIS | : | |
| | : | |
| Appellant | : | No. 892 MDA 2025 |

Appeal from the Judgment of Sentence Entered April 2, 2025
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0003991-2023

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED JUNE 11, 2026**

Appellant, Moshe Kalmen Notis, appeals from the judgment of sentence imposed after a jury convicted him of accidents involving death or personal injury, and the trial court found him guilty of related summary traffic offenses. On appeal, Appellant challenges the sufficiency of the evidence for his conviction for accidents involving death or personal injury, claims the trial court erred in denying his post-sentence motion concerning an email from a juror, and argues that the trial court failed to properly instruct the jury. After review, we affirm on the basis of the trial court's well-reasoned opinion.

The record reflects that on September 20, 2023, the victim, Anson Burkholder, was found deceased in a cornfield off Route 222, approximately ten to fifteen feet from the roadway. N.T., Trial, 2/10-13/25 at 34-38. The scene contained bicycle debris, vehicle parts, bumper fragments, and an automobile antenna. *Id.* at 125-128, 176-179. Autopsy results attributed

the victim's death to blunt force head trauma. *Id.* at 236. Investigation identified Appellant as the registered owner of a 2014 Toyota Sienna minivan with front-end damage matching the debris and automobile components recovered at the scene. *Id.* at 183-190. A fragment of a clip from the victim's suspenders was recovered from the front of Appellant's minivan pursuant to a search warrant. *Id.* at 187.

Appellant was arrested and charged with homicide by vehicle,[1] accidents involving death or personal injury,[2] duty to give information and render aid,[3] immediate notice of accident to police department,[4] careless driving,[5] overtaking vehicle on the left,[6] and depositing waste on highway.[7] *See* Criminal Information, 12/19/23, at 1-2 (unnumbered). The jury convicted Appellant of accidents involving death or personal injury, but it failed to reach

_____

[1] 75 Pa.C.S. § 3732(a).

[2] 75 Pa.C.S. § 3742(a).

[3] 75 Pa.C.S. § 3744(a).

[4] 75 Pa.C.S. § 3746(a)(1).

[5] 75 Pa.C.S. § 3714(b).

[6] 75 Pa.C.S. § 3303(a)(3).

[7] 75 Pa.C.S. § 3709(a).

a verdict on the count of homicide by vehicle resulting in a hung jury.[8] **See** Verdict of the Jury, 2/14/25 (single page); N.T., Trial, 2/10-13/25 at 459.

On April 2, 2025, the trial court sentenced Appellant to a term of three to ten years of incarceration in addition to a fine of $2,500 for accidents involving death or personal injury. Sentencing Order (accidents involving death or personal injury), 4/2/25 (single page).[9] Appellant filed a timely post-sentence motion requesting a new trial and for bail pending appeal. The trial court denied Appellant's post-sentence motion, and this timely appeal followed. Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues:

A. Whether the trial court erred in denying the Appellant's post-sentence motion without an evidentiary hearing when the Appellant introduced an email from a juror indicating that the jury's verdict was not based upon the legal standard that the Appellant "knew or should have known" he was involved in an

---

[8] The trial court found Appellant guilty of duty to give information and render aid, immediate notice of accident to police department, careless driving, and overtaking vehicle on the left. **See** Verdict of the Judge, 2/14/25 (single page). The trial court found Appellant not guilty of depositing waste on the highway. **See id.**

[9] On the summary traffic offenses, the trial court imposed a fine of $500 for careless driving and a fine of $25 for overtaking vehicle on the left. **See** Sentencing Order (careless driving), 4/2/25 (single page); Sentencing Order (overtaking vehicle on the left), 4/2/25 (single page). The trial court concluded that the charges of duty to give information and render aid and immediate notice of accident to police department merged with accidents involving death or personal injury for purposes of sentencing. **See** Disposition of Charges, 4/2/25 (single page). Further, following the hung jury, the trial court dismissed the charge of homicide by vehicle. **See id.**

accident with a person but rather a non-legal standard of ["]should have stopped to investigate exactly what the Appellant's vehicle struck at the time of the accident["]?

B. Whether the Commonwealth failed to establish sufficient evidence to prove beyond a reasonable doubt the crime of accidents involving death or personal injury when there was no direct or circumstantial evidence that the Appellant knew or should have known his vehicle was involved in accident with a person on a bicycle as opposed to an unknown animal?

C. Whether the trial court erred in failing to properly instruct the jury on the legal standard of "knew or should have known" as a necessary element of the charge of accidents involving death or personal injury when the jury asked a specific question as to the definition of "should have known"?

Appellant's Brief at 6 (some formatting altered).

In the trial court's Rule 1925(a) opinion, the Honorable Eleni Dimitriou Geishauser thoroughly addressed Appellant's issues and held: the evidence was sufficient to sustain Appellant's conviction for accidents involving death or personal injury; Appellant was entitled to no relief concerning the denial of his request for an evidentiary hearing regarding the juror email;[10] and Appellant waived his challenge to the jury instructions. **See** Trial Court Opinion, 10/15/25, at 1-17. We conclude that Judge Geishauser has accurately detailed the relevant facts with citations to the notes of testimony, and cited prevailing legal authority applicable to Appellant's claims, such that

_____

[10] Regarding Appellant's post-sentence motion requesting an evidentiary hearing concerning the juror email, we add only that the applicable standard of review is for an abuse of discretion, **see Commonwealth v. Jeter**, 296 A.3d 1187, 1192 (Pa. Super. 2023), and we discern no abuse of discretion in the trial court denying Appellant's request based on the reasons and authority discussed in the trial court's opinion. **See** Trial Court Opinion, 10/15/25, at 2-4.

further commentary by this Court would be redundant.  Accordingly, we adopt

Judge Geishauser's opinion as our own in affirming Appellant's judgment of

sentence.[11] *Id.*

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: 06/11/2026

---

[11] We adopt the trial court's opinion in full except with respect to its alternative conclusion regarding the merits of Appellant's challenge concerning the jury instructions.  As stated, we agree with the trial court that Appellant waived this issue on appeal, and, therefore, we do not reach the merits of the issue.

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: OF BERKS COUNTY, PENNSYLVANIA

: CRIMINAL DIVISION

V. :

: No. CP-06-CR-3991-2023

: Superior Court No. 892 MDA 2025

MOSHE KALMEN NOTIS, :

Defendant : Assigned Judge: Geishauser, J.

Rachel Louviaux, Esquire, Assistant District Attorney,
Attorney for the Commonwealth

Jay M. Nigrini, Esquire, Attorney for the Appellant

**MEMORANDUM OPINION, GEISHAUSER, E.D. JUDGE,** October 15, 2025

## I. Introduction

A jury trial was held before the Honorable James M. Lillis from February 10th through February 13th, 2025. Following the trial, Appellant, Moshe Notis, was found guilty of one count of Accidents Involving Death or Personal Injury[1], and four summary offenses. On April 2, 2025, Appellant was sentenced by Judge Lillis to three to ten years of incarceration in a state correctional facility. On April 3, 2025, Appellant filed a Post-Sentence Motion for Relief from his conviction along with a motion to set bail pending his appeal. On May 28, 2025, after a hearing, both motions were denied by Judge Lillis.

On June 27, 2025, Appellant filed a Notice of Appeal. On July 18, 2025, Judge Lillis ordered Appellant to file a Concise Statement of Errors Complained of on Appeal within 21 days. On August 8, 2025, Appellant timely complied with that order and filed the concise statement of errors. The case was subsequently transferred to the

---
[1] 75 Pa.C.S.A. § 3742(a)

BERKS COUNTY, PA

2025 OCT 15 PM 1:38

CLERK OF COURTS

1

undersigned after Judge Lillis retired at the end of September 2025. In his appeal, Appellant alleges the following errors:

1. "Whether the trial court erred in denying the Appellant's Post-Sentence Motion without an evidentiary hearing when the Appellant introduced an email from a juror indicating that the jury's verdict was not based upon the legal standard that the Appellant 'knew or should have known' he was involved in an accident with a person but rather a non-legal standard of should have stopped to investigate exactly what the Appellant's vehicle struck at the time of the accident?"

2. "Whether the Commonwealth failed to establish sufficient evidence to prove beyond a reasonable doubt the crime of Accidents Involving Death or Personal Injury when there was no direct or circumstantial evidence that the Appellant knew or should have known his vehicle was involved in an accident with a person on a bicycle as opposed to an unknown animal?"

3. "Whether the trial court erred in failing to properly instruct the jury on the legal standard of 'knew or should have known' as a necessary element of the charge of Accidents Involving Death or Personal Injury when the jury asked a specific question as to the definition of 'should have known'?"

Concise Statement of Errors Complained of on Appeal, 8/8/25.

## II. Appellant's Arguments

### a. Evidentiary Hearing on Juror Statement

First, the Appellant presented the Court with an email from a juror suggesting that the jury's verdict was not based on the proper legal standard. The court proceeded to deny

2

the Appellant's Post-Sentence Motion, without an evidentiary hearing, on this fact. Holding a hearing regarding the jury's deliberations is precluded by the "no impeachment rule" found in Pennsylvania Rule of Evidence 606(b)(1). That rule states:

> "During an inquiry into the validity of a verdict, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict. The court may not receive a juror's affidavit or evidence of a juror's statements on these matters."

Pa.R.E. 606.

It is "well established . . . that a juror may not impeach his own verdict after the jury has been discharged, and that a juror is not competent to testify as to what transpired in the jury room." Commonwealth v. Sero, 387 A.2d 63, 67 (Pa.1978). This longstanding rule is meant to provide finality and protect the confidentiality of jury deliberations. Pratt v. St. Christopher's Hosp., 866 A.2d 313, 319-320 (Pa.2005).

Because of the importance of protecting jury deliberations, only two exceptions to this general rule exist. First, jurors are permitted to testify about whether "prejudicial information not of record and beyond common knowledge and experience was improperly brought to the jury's attention." Pa.R.E. 606(b)(2)(A). Second, jurors are permitted to testify about whether "an outside influence was improperly brought to bear on any juror." Pa.R.E. 606(b)(2)(B).

Here, the evidence presented to the Court of a juror's statement regarding how the jury came to their conclusion does not fall under either exception. Rather, the juror's evidence falls squarely under the type of evidence that is forbidden under 606(b)(1). The

3

proffered evidence by the Appellant discusses the mental processes of other jurors and would necessarily include statements of other jurors within the deliberation room. This is not permitted under Rule 606(b)(1). Commonwealth v. Jeter, 296 A.3d 1187, 1195 (Pa.Super 2023) ("Under no circumstances may jurors testify about their subjective reasoning processes."). Moreover, the no impeachment rule prohibits the Court from receiving "a juror's affidavit or evidence of a juror's statements on any of the prohibited matters." Pa.R.E. 606(b)(1).

An evidentiary hearing on the juror's email would have proved meaningless. Even if the Court accepted the email, an evidentiary hearing would not have garnered any more information because no juror could have testified as to what was discussed during deliberations or what legal standard they applied. Therefore, the Court did not err when it denied Appellant's Post-Sentence Motion without an evidentiary hearing.

### b. Sufficiency of the Evidence

Second, Appellant argues that the evidence presented at trial was not sufficient to convict him of Accidents Involving Death or Personal Injury beyond a reasonable doubt. The Appellant specifically argues that there was no direct or circumstantial evidence that the Appellant had the requisite *mens rea* to convict him of the offense.

Sufficiency of the evidence claims are a question of law. Commonwealth v. Widmer, 319 744 A.2d 745, 751 (Pa.2000). Evidence is "deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Id.* During review of a sufficiency of the evidence claim, the evidence is viewed "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be

4

drawn." *Id.* "The evidence at trial need not preclude every possibility of innocence." Commonwealth v. Love, 896 A.2d 1276, 1283 (Pa. Super. 2006). The fact finder may also render a guilty verdict based "wholly on circumstantial evidence." Commonwealth v. Miller, 172 A.3d 632, 640 (Pa. Super. 2017). Finally, "the factfinder is free to resolve any doubts regarding a defendant's guilt 'unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.'" *Id. quoting* Commonwealth v. Smith, 863 A.2d 1172, 1176 (Pa. Super. 2004).

The Appellant challenges his conviction of Accidents Involving Death or Personal Injury, 75 Pa.C.S.A. § 3742. Section 3742(a) states:

> "The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid)."

75 Pa.C.S.A. § 3742(a).

Despite § 3742(a) not having a *mens rea* element written in the statute, it has been held that the *scienter* for § 3742(a) is that of negligence as found in 18 Pa.C.S. § 302(b)(4). Commonwealth v. Woosnam, 819 A.2d 1198, 1205 (Pa. Super. 2003). Specifically, the Commonwealth must prove beyond a reasonable doubt that the defendant "knew or should have known" that he was in an accident resulting in death or personal injury. *Id.*; *see also* Commonwealth v. Kinney, 863 A.2d 581, 585-586 (Pa.Super. 2004).

5

At trial, the Commonwealth presented numerous witnesses over three days of testimony. Wilson Burkholder, the victim's (Anson Burkholder's) brother, testified that he arrived at his home, 1201 Richmond Road, shortly before 6:00 p.m. on September 20, 2023. (*Notes of Testimony, 2/10/25,* at 26). When he arrived at his home, six of his younger siblings and Elaine, Anson's wife, were there. (*Id.*). Wilson testified that Anson was at a different farm at 1312 Pleasant Hill Road, roughly 2.5 miles away. (*N.T.* at 26). Anson was supposed to return to Richmond Road soon after 6:00 p.m. because that is when the family eats dinner. (*Id.* at 27). Wilson testified that, on September 20, 2023, Anson did not return for dinner. (*Id.* at 28). Security footage of nearby businesses placed Anson in the area of 1312 Pleasant Hill Road shortly after 5:00 p.m. (*Notes of Testimony, 2/11/25,* at 198-199). Video also shows Anson leaving Pleasant Hill Road and heading toward U.S. 222 around 5:30 p.m. (*Id.* at 200-201). Anson was still not back by 7:30 p.m. that night, leading Wilson to worry and go out looking for him. (*Notes of Testimony, 2/10/25,* at 28).

Wilson proceeded to bike from Richmond Road to Pleasant Hill Road, a 10-15 minute commute using U.S. 222 West. (*Notes of Testimony, 2/10/25,* at 27-28). When Wilson arrived at 1312 Pleasant Hill Road, Anson was not there. (*Id.* at 30). Around 8:00 p.m., Wilson proceeded back to Richmond Road and he found Anson's bike on the side of U.S. 222 and Anson's body further off the road in a field. (*Id.* at 33-34). Other pieces of the bicycle were found, along with part of a black front bumper, an AM/FM antenna, and other pieces of plastic. (*Notes of Testimony, 2/11/25,* at 172). Anson was not breathing at the time Wilson found

6

him. (*Notes of Testimony, 2/10/25,* at 35). Anson was bloodied, missing a shoe, and one of the clips of his suspenders was broken off and missing from his person. (*Notes of Testimony, 2/11/25,* at 174-175). Anson was pronounced dead at the scene. (*Id.* at 156).

Sara Stamm testified that, on September 20, 2023, she was driving on U.S. 222 on her way home from work between 5:15 and 5:30 p.m. (*Notes of Testimony, 2/11/25,* at 98). She testified to seeing a black minivan "swerve into oncoming lane," a "big cloud of dust" appear, and "something tumble into the street." (*Id.* at 99). Another driver, Steven Strus, testified to seeing a bicycle in two pieces on the shoulder of U.S. 222. (*Id.* at 107). Mr. Strus drives that route every day and had not noticed any debris of the kind on the shoulder until that night around 6:30 p.m. (*Id.* at 107-108). Security footage also shows a black minivan travelling on U.S. 222 at 6:05 p.m. that day, with damage already visible on the front of the vehicle. (*Id.* at 204-205).

Nelson and Harvey Brubacher then testified regarding the Appellant and the black minivan seen on U.S. 222. Harvey owned a produce farm that Appellant inspected nearly a dozen times per week to ensure the process was kosher pursuant to their Jewish faith. (*Notes of Testimony, 2/10/25,* at 63-64). Appellant would usually arrive at Harvey's home around 6:00 p.m. to observe the milking and ensure compliance. (*Id.* at 65). Harvey testified that Appellant always arrived at his home in a black Toyota minivan. (*Id.* at 70). On the morning of September 20, 2023, Appellant arrived at Harvey's home with no damage on his car. (*Id.* at 70-71).

7

On the evening of September 20, 2023, Appellant arrived at Harvey's home soon after 6:00 p.m. (*Notes of Testimony, 2/10/25,* at 71). Harvey testified that Appellant was driving "crazier than normal" with "significant" damage to the front of the passenger side of his car. (*Id.* at 73). After the Appellant arrived and parked, Nelson approached him as Appellant was assessing the damage to his vehicle. (*Id.* at 49). Nelson asked Appellant "what did you hit, did you hit a deer?" (*Id.*). Nelson testified that Appellant "got quiet" and stated he was unsure what he hit, but suggested it may have been a pole, and that he hit it right before on his way to the farm. (*Id.*). Nelson responded that it could not have been a pole because the wheel was not damaged, and not an animal because there was no hair, so he asked if Appellant saw anything. (*Id.* at 50-51). Appellant stated he did not see anything in his mirror after the collision. (*Id.* at 51). Roughly thirty minutes after this conversation Appellant, unprompted, told Nelson he thought he saw a deer jump in front of his car. (*Id.* at 52). No evidence of either poles or deceased animals was found at the scene. (*Notes of Testimony, 2/13/25* at 335-336).

Harvey further testified about Appellant's actions that evening at the farm. Appellant was walking around the farm, sitting on the ground while talking on the phone, and leaning over fences—actions Appellant never took while at the farm. (*Notes of Testimony, 2/10/25,* at 78). Harvey described Appellant's demeanor as "agitated." (*Id.*). Later that night, Harvey learned of a hit and run accident involving Anson Burkholder on U.S. 222 and thought that Appellant might be involved. (*Id.* at 85). This newfound information led Harvey to call the police, ask

8

questions about the incident, and then provide details on Appellant's car, appearance, name, and residence. (*Id.* at 86-90).

Shortly after this occurred at the Brubacher residence, police were alerted to an accident on U.S. 222 and Officer Christian DeAngelo of the Norther Berks Regional Police Department arrived at the scene. (*Notes of Testimony, 2/11/25,* at 168-169). Officer DeAngelo then walked the scene with other Troopers who responded: Troopers Scott, Wampler, and Dahler. (*Id.* at 176-177). "Gouge marks" were observed in the roadway near the bicycle, indicating the point of impact. (*Id.*). Then measurements were taken, evidence was photographed and eventually collected to be secured. (*Id.*). Following the on-scene investigation, Officer DeAngelo received a call from Harvey Brubacher, detailing a person of interest, his car, and his general location. (*Id.* at 182). After receiving this information, Officer DeAngelo searched for and found Appellant's address and vehicle. (*Id.* at 183). He requested a local officer to go to Appellant's home and watch the vehicle, which Officer Warfel did. (*Id.* at 183-184).

Officer Warfel was the first person to arrive at Appellant's home and locate the vehicle in the early hours of September 21, 2023. (*Notes of Testimony, 2/11/25,* at 113). He observed "significant front-end damage to the front passenger side of the vehicle." (*Id.* at 114). He also had a brief interaction with Appellant sometime after 1:00 a.m. (*Id.* at 116). Appellant was "nervous" and "anxious" and he, unprompted, told Officer Warfel he thinks he hit a deer. (*Id.*). Appellant then went back inside for the rest of the night. (*Id.* at 118).

Officer Warfel was relieved briefly by Officer Tappen, who was then relieved by Trooper Scott at around 7:00 a.m. on September 21, 2023. (*Notes of Testimony, 2/11/25,* at 120-134). At 10:30 a.m. that day, Officer DeAngelo and others arrived with a search warrant for Appellant's vehicle. (*Id.* at 135). The officers inspected the damage to the front of the vehicle. (*Id.* at 136). This included damage to the headlight, the bumper, the fender, the windshield, a missing antenna, and the side of the car had "cleaning marks" from something brushing up against it and "cleaning" the dirt off of it. (*Id.*). The pieces of the car that were damaged or missing were consistent with those found at the scene of the accident. (*Id.* at 144-145). Further, Anson's missing suspender clip was found lodged between the fender and the hood of the vehicle. (*Id.* at 146-147).

Following testimony of the initial investigation at the scene and of the vehicle, expert testimony was presented about the cause of death and the accident reconstruction. Dr. Neil Hoffman, an expert in forensic pathology, testified as to the cause of Anson's death. (*Notes of Testimony, 2/11/25,* at 216). Dr. Hoffman conducted an autopsy of the victim on the night of September 21, 2023. (*Id.* at 218). Dr. Hoffman observed injuries to the victim's head, torso, upper and lower extremities, and abrasions near his left eye. (*Id.* at 221). Further, there were injuries to the left foot "consistent with a shoe being forcibly removed." (*Id.* at 226). Internally, the victim had multiple broken ribs and a broken sternum. (*Id.* at 228). Further, the victim's skull was fractured, and there was bruising, tearing, and hemorrhaging of the brain. (*Id.* at 229).

10

Dr. Hoffman could not, with any certainty, opine on where the point of impact occurred. (*Notes of Testimony, 2/11/25,* at 235). He did find it "more likely than not" that impact occurred on the left side of the victim as that is where the "skull lost its surface." (*Id.*). Consistent with being hit from the left, Dr. Hoffman explained this would have caused the victim to turn to the right. (*Id.* at 245-246). He could not, however, rule out Appellant's theory, that all of the victim's injuries stemmed from hitting the ground as opposed to hitting the vehicle. (*Id*). Finally, Dr. Hoffman determined, with certainty, that the cause of death for the victim was "brain stem lacerations and contusions due to blunt impact to the head" caused by the head being in motion and hitting a stationary object. (*Id.* at 236-240). With such injuries, the victim would have died "in an order of minutes" after impact. (*Id.* at 236). He further testified that he did not find any grass or vegetation on the victim despite there having been an opportunity for such vegetation to stick to him because of the blood on the victim's head. (*Id.* at 247).

Finally, Trooper Jarod Wampler of the Pennsylvania State Police testified as an expert in crash reconstruction. (*Notes of Testimony, 2/12/25,* at 310). Trooper Wampler testified about his process in recreating the accident by mapping the evidence. (*Id.* at 327). He explained that in collisions of this kind, objects from the crash typically disperse in a "cone-like pattern" from the point of impact outward. (*Id.*). Here, Trooper Wampler observed such a pattern with the bicycle tire, the car parts, the physical bicycle, and the victim's body. (*Id.*). He then traced that back to a tire mark in the road and designated that as the point of the collision. (*Id.*). These marks in the road were places where something "dug into the

11

pavement." (*Id.* at 331). Specifically, Trooper Wampler stated that the marks were "where the bicycle was struck by the vehicle, it became airborne, and these gouge marks are from the bicycle as it lands back onto the roadway." (*Id.* at 332).

Trooper Wampler was also present at the execution of the search warrant on Appellant's vehicle. Trooper Wampler testified about some of the damage to the vehicle. (*Notes of Testimony, 2/12/25,* at 342-346). He explained that the "cleaning" of the side of the car is likely from when the victim came off of the vehicle. (*Id.* at 342). He further testified to observing a mark resembling the bottom of a shoe below the cleaned off portion of the car, along with the "embed of a jean-like material." (*Id.* at 343). There was also red paint found on the vehicle, consistent with the vehicle making contact with the victim's red bicycle. (*Id.* at 345).

All of this investigation and recreation led Trooper Wampler to determine that Appellant's vehicle struck the victim's bicycle "from the rear first." (*N.T.* at 350-351). Appellant proceeded to drive "through the bike" creating the bicycle tire marks in the road. (*Id.* at 351). After the initial collision, the victim "wrapped back onto the hood," hitting it with his back, hitting his head on the windshield, and finally the victim was "vaulted off to the right side of the vehicle." (*Id.*). Further, based on the accident reconstruction and where the tire marks were, Trooper Wampler testified that this accident occurred in the right shoulder of the road because "all the evidence that was found was observed on the shoulder and also the embankment." (*Id.* at 355). Finally, Trooper Wampler, on cross-examination,

12

explicitly disagreed with Appellant's theory of how the crash could have occurred. (*Id.* at 372).

Appellant's specific contention is that the evidence is not sufficient to prove that he "knew or should have known" he was involved in an accident with another person. All of the evidence, taken together, is sufficient to sustain such a finding. The evidence presented at trial described the Appellant striking the victim's bicycle from behind, continuing to drive through it, and then having the victim land on the hood of the car. All of this occurred during daylight hours. Further testimony described the Appellant as "agitated" and "nervous" in the hours following the accident. On multiple occasions Appellant offered an explanation for the damage to his car without ever being asked to provide one. Eyewitness testimony further described a large cloud of dust forming as the accident occurred, with car and bicycle pieces being left on the side of the road. There was no evidence of a deceased animal at the scene, nor did the Appellant offer that explanation until thirty minutes after initially saying he thought he hit a pole.

Taken together and viewed in the light most favorable to the Commonwealth, these facts were sufficient for the jury, as factfinder, to conclude that Appellant was guilty of Accidents Involving Death or Personal Injury. Accordingly, this claim is without merit.

### c. Jury Instruction on "knew or should have known"

Finally, Appellant raises the issue of whether the Court erred in instructing the jury on the legal standard of "knew or should have known." Specifically, Appellant takes issue

13

with the Court's response to a jury question requesting clarification as to what "should have known" meant.

First, "in order to preserve a claim on appeal, a party must lodge a timely objection." Commonwealth v. Murray, 83 A.3d 137, 155 (Pa. 2013) (*citing* Commonwealth v. Montalvo, 956 A.2d 926, 936 (Pa. 2008)). Likewise, the Pennsylvania Rules of Criminal Procedure state that "[n]o portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate." Pa.R.Crim.P. 647(B).

These rules apply equally to responses to juror questions. *See* Commonwealth v. Gonzalez, 112 A.3d 1232, 1238-1240 (Pa. Super. 2015). In Gonzalez, the jury asked the Court five questions. *Id.* at 1239. After discussion with counsel, all parties agreed as to how the questions would be answered, and what would be provided to the jury. *Id.* Thus, the Superior Court found that the Appellant waived his ability to challenge the Court's response to the jury questions because "counsel agreed on the responses" and "Counsel for Appellant did not object to the answers or to the trial court's plan." *Id.* at 1239.; *see also* Commonwealth v. Parker, 104 A.3d 17, 20 (Pa. Super.2014) (holding that noting an objection before an instruction is given, but not objecting after the instruction is given to the jury, is insufficient to preserve the issue for appeal). As such, the Superior Court found that the Appellant "has not preserved an objection." *Id.*

The same is true here. Appellant alleges error in the Court's instruction on the legal standard of "knew or should have known." Appellant points to the Court's answer to the jury about the phrase "should have known" as error. Specifically, the jury asked the Court, "could some clarification be provided as to what the phrase should have known means for

14

count 1." (*Notes of Testimony, 2/12/25,* at 430). Counsel for Appellant then stated "[t]hese are all questions for them to answer. We can't answer those questions for them." (*Id.*). The Court responded by saying, "how do you explain what should have known means, it pretty much speaks for itself" to which Counsel for Appellant replied "yes." (*Id.* at 431). Counsel for Appellant further suggested sending a note saying the Court cannot answer the question. (*Id.* at 431). Eventually, the Court spoke directly to the jury and answered the question consistent with the communication between the Court and Counsel, stating "[s]hould have known means should have known. I don't know how else to explain that." (*Id.* at 432). Counsel for Appellant did not object to these instructions, and the Court went into recess until the next communication from the jury. (*Id.* at 433).

As in Gonzalez, *supra,* Appellant failed to preserve this issue for appeal by not objecting, and expressly agreeing with the Court on the alleged erroneous instruction to the jury.

On the merits, when reviewing jury instructions, courts "will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper." Commonwealth v. Caraballo, 325 A.3D 1025, 1032 (Pa. Super. 2024) (citation and quotation marks omitted). The crux of the analysis is whether "the instruction fairly conveys the legal principles at issue." Commonwealth v. Reid, 259 A.3d 395, 432 (Pa.2021) (citation and quotation marks omitted). Further, "[a]n instruction will be upheld if it clearly, adequately and accurately reflects the law. *Id.* (citation and quotation marks omitted). In so instructing the jury, "the trial court may use its own form of expression to explain difficult legal concepts to the jury, as long as the trial court's instruction accurately conveys the law." *Id.* (citation and quotation marks omitted.)

15

Jury charges will only be found erroneous if "the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue." Caraballo, *supra,* at 1032. (citation omitted.) Moreover, an instruction "is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error . . . the trial court has wide discretion in fashioning jury instructions." *Id.* (citation omitted).

As explained above, Appellant raises the issue of the Court's instruction on the legal standard of "knew or should have known." On § 3742(a), Accidents Involving Death or Personal Injury, the Court provided the standard jury instruction. *See* Pa. SSJI (CRIM), § 17.3742 (2024). Specifically, the Court instructed the jury that they must find the Commonwealth proved, beyond a reasonable doubt, that "the defendant was driving a vehicle that he knew or should have known was involved in an accident that resulted in injury or death to a person." (*Notes of Testimony, 2/12/25,* at 419). The jurors were also provided with the elements of each offense. (*Id.* at 424). The only other time this standard was discussed was in response to the jury's question outlined above.

This instruction "fairly conveys the legal principles at issue." Reid, *supra,* at 420. The Court read verbatim the standard jury instruction on § 3742. There was no omission in the instruction nor was the instruction misleading. The Court clearly instructed the jury that to return a guilty verdict, they must find that the Appellant "knew or should have known" he was in an accident that resulted in death or injury to a person. This in no way misled the jury. It was a straightforward reading of the elements of the offense. When presented with a request to clarify, the Court, after consultation with Appellant's Counsel, instructed the jury that the phrase "should have known" meant what it says, and the Court

16

could not explain it any further. This instruction does not rise to the level of misleading the jury. Further, instructions are deemed "adequate" unless the jury was "palpably misled." <u>Caraballo</u>, *supra,* at 1032. That did not occur here. The Court's instruction was not erroneous.

For the aforementioned reasons, we respectfully request that Appellant's appeal be denied.

BY THE COURT:

_____
Eleni Dimitriou Geishauser, Judge

17